**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2001-CT-01336-SCT**

*MARY LYNN FAGAN*

*v.*

*STATE OF MISSISSIPPI*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2001 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM B. JACOB |
| | JOSEPH A. KIERONSKI, JR. |
| | DANIEL P. SELF, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | E. J. (BILBO) MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 12/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     From a Clarke County Circuit Court judgment of conviction on three counts of embezzlement, Mary Lynn Fagan appealed to this Court, and the case was assigned to the Court of Appeals, which, in a 5-5 decision, affirmed the circuit court's judgment of conviction. *Fagan v. State*, 881 So.2d 851 (Miss. 2003). Fagan filed a petition for writ of certiorari,

asserting errors both in the trial court judgment and in the Court of Appeals' affirmance of the trial court judgment, and we granted certiorari. *Fagan v. State*, 878 So.2d 66 (Miss. 2004). We granted certiorari to consider the issue involving repeated references to a polygraph examination. Finding that these repeated references to a polygraph examination were prejudicial in this close, circumstantial evidence case and, thus, deprived Fagan of a fair trial, we reverse the judgments of the Court of Appeals and the Clarke County Circuit Court and remand this case for a new trial consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     These facts are quoted verbatim from the opinion of the Court of Appeals:

> Mary Lynn Fagan worked as a deputy clerk in the Clarke County Justice Clerk's (sic) office from 1994 until 1999. After money was discovered missing from the clerk's office, Fagan was indicted for embezzling the missing money. Specifically, she was indicted for embezzling money on three separate occasions: February 19, June 16 and 19, 1999. Throughout 1999, Fagan worked with two other deputy clerks who also received money, issued receipts and made deposits. The State's case was based on circumstantial evidence.

881 So.2d at 853.

¶3.     On appeal, Fagan raised five issues: (1) insufficiency of evidence; (2) the prosecution's improper questioning regarding witnesses' willingness to take polygraph examinations; (3) the prosecution's use of documents that were not disclosed in discovery; (4) the prosecution's introduction of other crimes; and, (5) the trial court's failure to grant a new trial based on newly discovered evidence. The Court of Appeals found no error and affirmed the judgment of the circuit court.

¶4.     Although the Court of Appeals' plurality agreed that the case was entirely circumstantial, it found a "common thread" of evidence pointing to Fagan, including her initials

2

on the computer-generated receipts for the monies in question; testimony that she had been the clerk to receive the money; and, testimony that Fagan was the only deputy clerk who knew how to backdate receipts in the computer.[1] *Id.* at 853. As to the issue regarding the polygraph examination, a sharply-divided court held that the prosecution's comments, remarks and continuing line of questioning regarding the polygraph examination, made over Fagan's sustained objections, was not an attempt to circumvent the judge's ruling, but was merely an attempt to word his question so as to avoid a hearsay objection. The Court of Appeals also stated that the references to the polygraph examinations, under these facts, was not enough to entitle Fagan to a new trial.

¶5.     In a dissenting opinion, Presiding Judge Southwick, joined by Chief Judge McMillin and Judges Chandler and Griffis, stressed that the repeated references to the polygraph examinations were very important in this case based entirely on circumstantial evidence, with the undisputed facts revealing that all of the deputy clerks had unrestricted access to the money.[2]   Presiding Judge Southwick noted that the remarks and questions about the other two clerks volunteering to take a polygraph examination "added inappropriate evidence onto the scale" of what was a closely balanced case. *Id.* at 859 (Southwick, P.J., dissenting).

## DISCUSSION

¶6.     In the case sub judice, the Court of Appeals' plurality held that the prosecutor's

---

[1] It is undisputed that the two other deputy clerks had access to a common cash drawer and that placing the funds in the drawer, preparing deposit slips, making bank deposits and preparing computer-generated reports regarding these transactions were shared duties without safeguards or restrictions concerning the common cash receptacle.

[2] Then-Presiding Judge King was the fifth dissenter; however, he did not join Presiding Judge Southwick's dissent, but instead dissented without opinion.

references to polygraph examinations and to the cooperation of other possible suspects were inadvertent and insignificant. In response, Fagan asserts that the repeated remarks made by the prosecutor regarding the other clerks' willingness to take the polygraph examination is reversible error pursuant to *Weatherspoon v. State*, 732 So.2d 158 (Miss. 1999). Less than one month prior to trial, the trial judge entered an order granting Fagan's motion in limine regarding polygraph evidence. Specifically, the trial court's order stated, inter alia:

> [T]hat the prosecution and all of its witnesses are limited and prohibited from making any reference, statement or insinuation concerning the taking or not taking of any polygraph examination or any results thereof.

However, notwithstanding the trial court's pre-trial order prohibiting evidence concerning polygraph examinations, and notwithstanding repeated defense objections which were sustained by the trial court, the prosecutor, in a line of questioning regarding the other clerks' willingness to cooperate with the investigation, made several references to polygraph examinations. The State's key witness was Earl Smith, a special agent with the Department of Audit for the Mississippi State Auditor's Office. During the redirect examination of Agent Smith in the State's case-in-chief, the following testimony was elicited:

> Q. Well, there are two other clerks in the office; is that right?
> A. That's correct.
> Q. And did your investigation not eliminate the two of them?
> BY MR. JACOB: We object to leading and especially in light of the witness' prior answer.
> BY THE COURT: Sustained for leading.
> Q. (Continuing): What did your investigation reveal about the other two ladies?
> MR. JACOB: We object to hearsay now.
> BY THE COURT: All right, I'm going to sustained [sic] that counsel.
> Q. (Continuing): I don't want anything they told you. What did your investigation reveal about whether the two of them committed this crime?
> BY MR. JACOB: Object to hearsay.
> BY THE COURT: Well, I'm going to sustain it.

4

Q. (Continuing): I'm not talking about anything they said to you. In your investigation, your audit, did it reveal their involvement in this?

BY MR. JACOB: Object to hearsay--

BY THE COURT: Well, your question is does he have an opinion of whether the other two are guilty?

BY MR. MITCHELL: No, sir, what did his investigation show?

BY THE COURT: Well, I'm going to sustain the objection.

Q. (Continuing by Mr. Mitchell): Okay, let's go through them one by one. What did you do to rule out the other two Clerks?

BY MR. JACOB: We object to this, your Honor. It is improper redirect, and it's hearsay.

BY THE COURT: Objection is overruled. I think he can answer that question.

Q. (Continuing) What was the first thing you did?

A. Okay, the first thing I did was I went in and looked at the receipts, compared those with daily reports. I secured bank records and looked at such things as who made deposits, who receipted for money. We interviewed each clerk. The other two clerks or all of the clerks were provided with the opportunity to take a polygraph--

BY MR. JACOB: Your Honor, we object.

BY THE COURT: Sustained.

A. (Mr. Smith): We--

Q. No results--you can't say any results of a polygraph--

BY MR. JACOB: May we approach--

Q. The question I have--

BY THE COURT: At the next break, you may--objection is sustained.

Q. (Continuing by Mr. Mitchell): The next question I have is did the other two clerks agree to that?

A. Yes–

BY MR. JACOB: We object.

Q. All right. So, they cooperated--

BY THE COURT: Wait just a minute, counsel.

BY MR. MITCHELL: All right.

BY THE COURT: You have an objection to what, questioning the other two clerks?

BY MR. JACOB: May we approach?

BY MR. MITCHELL: The question wasn't he asked them to take a polygraph; the question is just did they agree to do that.

BY THE COURT: Right, and your objection is sustained. It is not admissible or relevant.

Q. (Continuing): All right, did the two clerks cooperate in every way you asked them to cooperate?

A. Yes, they did--

BY MR. JACOB: We object to this, your Honor, especially in light of the prior

statement, the prior question.

BY THE COURT: Well, overruled as to that particular objection, about cooperation during his investigation.

Q. (Continuing): They did cooperate?

A. Yes, they did.

Q. Okay. Did they refuse to do anything you asked them to do to help with the investigation?

BY MR. JACOB: Object to leading.

BY THE COURT: All right, rephrase it. Sustained. You're suggesting the answer.

Q. (Continuing): What if anything did they do--did they fail to cooperate with you?

A. Nothing.

¶7.     Agent Smith testified that each clerk was given an opportunity to submit to a polygraph examination. Although Fagan's immediate objection was sustained, the district attorney told his witness, in front of the jury, not to refer to the *results* of the polygraph examinations. At this time, the judge denied defense counsel's request to approach the bench. Although there was an objection by defense counsel, Agent Smith further testified that the clerks agreed to submit to a polygraph examination.

¶8.     After this exchange, the trial judge offered to admonish the jury:

> If you want me to admonish the Jury and unring the rung bell as you say, I'll be more than happy to do that and then question the Jury whether they will follow the Court's instructions to disregard any questions or reference to any possible polygraph examination by anybody in this case, and then make a ruling depending on how they respond, or would you rather just leave it alone because I'm convinced as of right now that that inference or reference in this trial is not serious enough to justify the granting of a mistrial or result in some miscarriage of justice. It's relatively insignificant in the context of this trial in my opinion.

Fagan's counsel responded to the trial judge's offer by noting, "Your Honor, as to the choices given, we have no choice at this time, but to not say anything further at this stage." A procedural default may not occur if the instruction would only serve to exacerbate the error. *Vickery v.*

6

*State*, 535 So. 2d 1371, 1380 (Miss. 1988).

¶9.     The Court of Appeals affirmed the judgment of the circuit court, opining that because there was no testimony offered by the two clerks as to whether they took a polygraph examination, no reversible error occurred. However, Presiding Judge Southwick dissented, stating:

> Knowing that the other clerks had cooperated and Fagan had not, knowing that each clerk was in a similar position to have made the conversion, and knowing that there were some credibility choices to make that would lead to a guilty or not guilty determination, the jury in reaching its verdict cannot reliably be said to have been untainted by this unquestionably inappropriate injection of the polygraph examination point. The "nature of the error and the circumstances attendant to its disclosure" are what lead us to conclude that reversal is required. *Weatherspoon*, 732 So.2d at 163.

*Fagan*, 881 So. 2d at 861 (Southwick, P.J., dissenting).

¶10.    This Court has held that "any evidence pertaining to a witness's offer to take a polygraph, refusal to take a polygraph test, the fact that a witness took a polygraph test or the results of a polygraph test is inadmissible at trial by the State or by the defense." *Weatherspoon v. State*, 732 So.2d at 163. Reversal is not automatic upon admission of such evidence. *Id.* Instead, what is important is the "nature of the error and the circumstances attendant to its disclosure." *Id.*

¶11.    This case was based entirely upon circumstantial evidence; therefore, this Court must give great weight to inferences. In reviewing the conviction, therefore, we must view all the evidence, as well as all reasonable inferences which may be drawn from the evidence, in the light most favorable to the State. *Jackson v. State*, 815 So.2d 1196, 1202 (Miss. 2002). There

was no direct evidence linking Fagan to the conversion of funds. Therefore, when the State, in violation of the trial court's pre-trial order and over repeated defense objections which were sustained by the trial judge, elicited testimony from its key witness that the other suspects had cooperated, leading the jury most definitely to infer that they had passed polygraph examinations, the jury was thus allowed to consider inappropriate evidence in a case which was closely balanced before such testimony was elicited. As in *Weatherspoon*, the "nature of the error and the circumstances attendant to its disclosure" lead us to conclude that reversal is required in today's case.

¶12.    In so finding, we are keenly aware of the fact that the trial judge who was there on the scene to observe the jurors' reaction to the polygraph testimony concluded that its effect on the jury was "relatively insignificant."  We acknowledge that the trial judge is in a much better position to determine the effect of inadmissible testimony on the jury.  *Blocker v. State*, 809 So.2d 640, 643 (Miss. 2002).    Thus, while we afford great deference to our trial judges' findings on such matters, such deference is not unfettered. We are constrained to find as a matter of law, based on the record before us, that the learned trial judge in today's case erred in allowing the polygraph evidence. Stated differently, inasmuch as most of the inadmissible evidence came in after the trial court had sustained the defense objections, the trial court erred in not granting the defendant's motion for a new trial based on this inadmissible evidence.

## CONCLUSION

¶13.    We find that Agent Earl Smith's testimony regarding the polygraph examination, and the subsequent questions by the prosecutor in violation of the trial court's pre-trial order and

over repeated defense objections which had been sustained by the trial judge, constituted reversible error, thus, depriving Fagan of a fair trial. Therefore, we reverse the judgments of the Court of Appeals and the Clarke County Circuit Court and remand this case for a new trial consistent with this opinion.

¶14.    **REVERSED AND REMANDED.**

**WALLER AND COBB, P.JJ., GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. SMITH, C.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING.**