ISHEE, J., for the Court.
¶ 1. Frederick Daniel Dendy appeals his conviction for murder and sentence of life in the custody of the Mississippi Department of Corrections. Finding no error, we affirm
STATEMENT OF FACTS
¶2. In December 2001, Windle Dendy (Windle) was found dead by her husband, Frederick Daniel Dendy (Dendy), in the home which they shared in Monroe County Mississippi. When the police arrived, they found broken glass on the floor at the rear door of the house and Windle lying on her stomach on her bed with two gunshot wounds to her back.
¶ 3. After an investigation, Dendy was indicted for her murder in October 2002. A jury trial was held in September 2003 and Dendy was subsequently convicted. Dendy then filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied.
¶ 4. Aggrieved by his conviction, Dendy appeals to this Court arguing the following: (1) whether the trial court erred in failing to conduct an investigation into whether juror misconduct resulted in an unfair trial; (2) whether the trial court erred in denying Dendy’s motion for a mistrial based on the mention of polygraph test results; (3) whether the trial court erred in its evidentiary rulings; (4) whether the trial court erred in revoking Den-dy’s bond due to perjury; and (5) whether the trial court erred in denying Dendy’s motion for a directed verdict or, in the alternative, a judgment notwithstanding the verdict.
ISSUES AND ANALYSIS
I. Whether the trial court erred in failing to conduct an investigation into whether juror misconduct resulted in an unfair trial.
¶ 5. During voir dire, the trial court asked that any member of the venire make *611 it known to the court if any of them knew Windle through “whatever personal relationship that might have been, church, school” and if they “[knew] something about the knowledge of the facts of this case through Windle or through [Windle’s] family members.” As a result of the trial court’s inquiry, several potential jurors presented information to the court and each was individually questioned. A jury was subsequently impaneled and the trial was conducted.
¶ 6. Following the verdict, Dendy asserted that one of the jurors had known Win-dle and had attended her funeral. In support of his argument, Dendy submitted an unsworn affidavit from a former spouse who claimed that she had seen the juror at both the Windle’s visitation at the funeral home and then later at the funeral. Den-dy maintains that he should be granted a new trial because the juror withheld this information which evidences that he did not receive a fair and impartial trial. See Collins v. State, 691 So.2d 918 (Miss.1997).
¶ 7. In response, the State maintains that the juror did not withhold any information from the trial court because she did not have any personal knowledge of Windle, nor did she have any knowledge of the facts of the case gained from either Windle or Windle’s family. In support of their assertion, the State provided a sworn affidavit from the juror which stated the following:
I ... did go by the funeral home and sign the book for [Windle]. It is common practice at the bank where I work to go by the funeral home and sign in when a customer or their relative dies. Fred Dendy was a former customer of [the bank] and I did not know him personally. I was not a friend or relative of [Windle] or any immediate family member of [Windle] and I had never- met [Windle]. I did not attend the funeral of [Windle].
In analyzing this issue, we are reminded that it is a judicial question as to whether a jury is fair and impartial, and the trial court’s judgment will not be disturbed unless it appears that it is clearly wrong. Doss v. State, 882 So.2d 176, 183(¶ 10) (Miss.2004). In addressing issues of this nature, the Mississippi Supreme Court has held:
[W]here, as here, a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court’s determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the juror reasonably could be inferred from the juror’s failure to respond.
Doss, 882 So.2d at 181(¶ 5) (quoting Odom v. State, 355 So.2d 1381, 1383 (Miss.1978)).
¶ 8. Based on the record and the juror’s sworn affidavit contained therein, we conclude the following in relation to the so-called Odom test: (1) the trial court’s question as to whether any juror had personal knowledge of Windle or facts of the case gained from either Windle or Win-dle’s family was certainly relevant; (2) the question was unambiguous; and (3) the juror at issue had no substantial knowledge of information which the trial court was seeking to elicit.
¶ 9. After a thorough review of the record, this Court finds that, although the *612 juror did go to Windle’s visitation at the funeral home and sign the guest book, she did so in an employment capacity and not as a result of having personally known Windle or her family. This Court further finds that there is no credible basis in the record to support a claim that the juror gained any knowledge of the facts of the case either from Windle or from Windle’s family. As a result, this Court is unable to conclude that Dendy received an unfair trial based on this issue. This Court specifically finds that the trial court was not clearly wrong, and therefore, Dendy’s argument is without merit.
II. Whether the trial court erred in denying Dendy’s motion for a mistrial based on the mention of polygraph test results.
¶ 10. During the State’s case-in-chief, when asked about other possible suspects, a police investigator stated in part of her response that another suspect had taken and passed a polygraph test. Dendy immediately objected to the polygraph testimony and made a motion for a mistrial. After a recess to consider the parties’ respective arguments, the trial court subsequently denied the motion. Consequently, Dendy argues that the trial court abused its discretion since it is well established that neither the fact of taking a polygraph nor the results are admissible at trial. See Fagan v. State, 894 So.2d 576 (Miss.2004); Carr v. State, 655 So.2d 824 (Miss.1995).
¶ 11. Before proceeding with our analysis, we are mindful of the standard of review. “ ‘Whether to grant a motion for a mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for a mistrial is abuse of discretion.’ ” Caston v. State, 823 So.2d 473, 492(¶ 54) (Miss.2002) (quoting Pulphus v. State, 782 So.2d 1220, 1222(¶ 10) (Miss.2001)).
¶ 12. After a thorough analysis of the relevant case law, we conclude that Den-dy’s position does not reflect the complete state of the law. The Mississippi Supreme Court has held that although evidence regarding a witness’s offer ,to take a polygraph, refusal to take a polygraph, the fact that a witness took a polygraph, or the results of a polygraph are inadmissible, an inadvertent admission of such evidence does not automatically require a reversal. Weatherspoon v. State, 732 So.2d 158, 161— 63 (¶¶ 12-15) (Miss.1999). Furthermore, this Court has repeatedly held that:
A mistrial is not the inevitable result every time the jury is permitted to hear inadmissible evidence. The trial court is in the best position to assess the prejudicial impact of the improper evidence and decide whether a mistrial is necessary or whether the prejudice can be cured by admonishing the jury to disregard it.
Reed v. State, 764 So.2d 511, 514(¶12) (Miss.Ct.App.2000).
¶ 13. Unlike the polygraph reference in Fagan, the record in this case reveals that a single polygraph reference was made by a prosecution witness. See Fagan, 894 So.2d at 578-80 (¶¶ 6-9). Furthermore, in overruling the motion for a mistrial, the trial court determined that the single reference to the polygraph results was an inadvertent, unexpected comment which was unsolicited by the State. Finally, the trial court admonished the jury to disregard the reference to the offending testimony. “ ‘It is presumed that the jury follows the judge’s instruction.’ ” Moody v. State, 841 So.2d 1067, 1076(¶ 18) (Miss.2003) (quoting Davis v. State, 660 So.2d 1228,1253 (Miss.1995)).
¶ 14. After a thorough review of the record and the relevant case law, we conclude that neither the record nor Dendy’s *613 assertion provides a sufficient basis for supporting a finding that the trial court abused its discretion in denying the motion for a mistrial. Therefore, this Court specifically finds that Dendy’s argument is without merit.
III. Whether the trial court erred in its evidentiary rulings.
¶ 15. Dendy argues that his conviction and sentence should be reversed because the trial court erred in its evidentiary rulings. Each of Dendy’s arguments will be discussed in turn. We begin our discussion of this issue with the standard of review. The standard of review for a challenge to the admissibility of evidence is abuse of discretion, and the reviewing court may only reverse for abuse of discretion. Brown v. State, 864 So.2d 1009, 1011(¶ 8) (Miss.Ct.App.2004) (citing Gray v. State, 846 So.2d 260, 262(¶3) (Miss.Ct.App.2002)).
1. Victim’s blood stained clothing.
¶ 16. Dendy maintains that the admission by the State of photographs of the clothes Windle was wearing when she was shot was sufficiently effective for presenting the State’s theory of the case, and that the introduction of the clothing itself was prejudicial. Dendy offers Humphrey v. State, 759 So.2d 368 (Miss.2000) (holding regarding admissibility of expert witness testimony superceded by statute as discussed in Mississippi Transp. Comm’n v. McLemore, 863 So.2d 31 (Miss.2003)) in support of his argument. That case, however, dealt with the admissibility of gruesome crime photographs and is unpersuasive as to the issue Dendy has presented for our review. Nevertheless, Dendy maintains that the clothing was unnecessarily prejudicial because the witness testimony and the photographs provided sufficient evidence as to the crime scene, and the position, and state of the victim’s body.
¶ 17. The State points out that the trial court determined that the clothing was admissible in part due to the fact that it was the subject of testimony regarding forensic testing which had been performed on it. The State maintains that the trial court ruling was appropriate in that bloody clothes which confirm witness testimony are admissible even against any alleged prejudicial effect. See Overstreet v. State, 369 So.2d 275 (Miss.1979).
¶ 18. We are mindful that blood stained clothes may be admissible if they have probative value. Kniep v. State, 525 So.2d 385, 389 (Miss.1988). Rule 401 of the Mississippi Rules of Evidence provides that evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Furthermore, the Comment to M.R.E. 401 states that “[i]f the evidence has any probative value at all, the rule favors its admission.”
¶ 19. Ever aware of the possibility of prejudice, we point out that in this case, Dendy argued that he tested positive for gunshot residue on his hand due to touching the victim’s clothes; however, there was testimony that Dendy did not have any blood on his hands at the crime scene. The record reflects that the clothing had blood stains on it, and the issue of how and why Dendy had gunshot residue on his hands was critical to the jury’s determination of whether he was the person who killed Windle: Furthermore, the clothing corroborated the testimony of the investigators and the photographs of the scene. Physically seeing the clothing, and the quantity and location of the blood stains, was certainly probative of the ultimate issue in the case. Bearing in mind the *614 parties’ respective theories of the case, and the fact that crime scene photographs were introduced into evidence, Dendy has failed to provide this Court with a sufficient basis for concluding that the trial court abused its discretion in allowing the clothing to be admitted into evidence. Therefore, we find this issue to be without merit.
2. Statements made by the victim.
¶ 20. Dendy asserts that the trial court erred in admitting into evidence hearsay statements that witnesses said Windle made to them prior to her murder. Dendy argues that the statements were inadmissible because he did not have an opportunity to cross-examine the declar-ant. When the issue was raised in the trial court, the State argued that they were relevant to rebut Dendy’s assertion that the only thing he and Windle ever fought about was who loved the other the most. The State further argued that the statements were admissible as hearsay exceptions pursuant to M.R.E. 803(3) which provides that “[a] statement of the declar-ant’s then existing state of mind, emotion, sensation, or physical condition ... is not excluded by the hearsay rule.”
¶21. Before proceeding, we note that “the admissibility of testimonial evidence is left to the sound discretion of the trial court within the boundaries of the Mississippi Rules of Evidence, and it will not be found in error unless it is has abused its discretion.” Harris v. State, 861 So.2d 1003, 1018(¶ 41) (Miss.2003). Furthermore, the Mississippi Supreme Court has held that a relevant statement made by a murder victim prior to his death may be admissible as an exception to the hearsay rule under the declarant’s then-existing mental condition, or state of mind exception under M.R.E. 803(3). Brown v. State, 890 So.2d 901, 914-15 (¶¶ 42-46) (Miss.2004); Harris, 861 So.2d at 1019(¶ 42).
¶ 22. Additionally, we note that the trial court made detailed findings on the record that the statements were more probative on the point for which they were offered by the proponent than any other evidence which the proponent could procure through reasonable efforts, the statements had a high degree of trustworthiness, and the defense was given reasonable notice as to the State’s intent to offer them at trial.
¶ 23. Based on these record findings and the relevant case law, this Court is unable to conclude that the trial court abused its discretion. Therefore, we specifically'find this issue to be without merit.
IV. Whether the trial court erred in revoking Dendy’s bond due to perjury.
¶ 24. Prior to trial, the trial court conducted a hearing to determine the substance of Dendy’s affidavit of poverty which he had submitted requesting court-appointed counsel to represent him in his upcoming murder trial. At that hearing, the trial court questioned Dendy regarding information he had submitted regarding his financial assets and status. When asked about his assets under oath, Dendy did not tell the court about his substantial firearms collection, the money he had received from Windle’s final pay check, the money he had received as the beneficiary of Windle’s bank account, nor the money he had received from the sale of their household goods. Based on his evasive and deceptive answers and the bank records in its possession, the trial court determined that Dendy had committed perjury. Dendy was later indicted for the felony of perjury and the trial court revoked his bail pursuant to the Mississippi Constitution Article 3, § 29(2) (Rev.1998).
*615 ¶ 25. Dendy maintains that his conviction and sentence should be reversed because the trial court asked him for information that directly related to his murder trial. Specifically, Dendy was asked if he met with an attorney to discuss a divorce prior to his wife’s death. Dendy also argues that the revocation of his bond severely limited his ability to assist in the preparation of his own defense at his murder trial. Dendy offers Clay v. State, 757 So.2d 236 (Miss.2000) in support of his argument.
¶ 26. After reviewing the case, we find that Clay is instructive as to the standard of review. “Both the determination of indigent status and the setting of bail are left to the sound discretion of the trial judge. Such judgment shall not be overturned unless there is a showing of manifest error or abuse of discretion.” Clay, 757 So.2d at 239(¶ 12) (citing Lee v. Lawson, 375 So.2d 1019, 1021 (Miss.1979)). However, beyond that point, the case provides nothing more to aid in the resolution of this issue based on the facts of this appeal. The trial court’s ruling in Clay was reversed by the Mississippi Supreme Court because the trial court’s ruling had been impermissibly based on the opinion of Clay’s attorney that Clay was not indigent. Clay, 757 So.2d at 239(¶ 14). The attorney provided neither an affidavit nor any evidence to support his claim. Id. Furthermore, the Mississippi Supreme Court concluded that the trial court evidenced a bias toward Clay in revoking his indigent status based on the trial court’s comments regarding Clay’s perceived delaying tactics. Clay, 757 So.2d at 240(¶ 18).
¶ 27. The record in this appeal reflects that none of these factors were present during Dendy’s indigency hearing. The record reflects evidentiary support for the trial court’s ruling, and there is nothing in the record to indicate that the trial court did not act impartially. Therefore, this Court specifically finds that the trial court acted within its discretion in revoking Den-dy’s bail due to his indictment for the felony charge of perjury.
V. Whether the trial court erred in denying Dendy’s motion for a directed verdict or, in the alternative, a judgment notwithstanding the verdict.
¶ 28. Dendy argues that there was insufficient evidence presented by the State to support the conviction. He also argues that the conviction was not supported by the weight of the evidence. Both assertions implicate different standards of review, and each will be discussed in turn.
1. Sufficiency of the evidence.
¶ 29. A motion for a directed verdict or a judgment notwithstanding the verdict challenges the legal sufficiency of the evidence. The standard of review is as follows: the evidence is examined in the light most favorable to the State; all credible evidence found consistent with the defendant’s guilt must be accepted as true; and, the prosecution is allowed the benefit of all sound and reasonable inferences which may be drawn from the evidence. Jones v. State, 669 So.2d 1383, 1388 (Miss.1995). This Court may only reverse a jury’s conviction based on insufficient evidence where the evidence viewed in the light most favorable to the prosecution is such that a fair and reasonable jury could not find the defendant guilty. Id. To employ a “less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.” Malone v. State, 486 So.2d 360, 366 (Miss.1986).
*616 2. Weight of the evidence.
¶ 30. The standard of review regarding the denial of a motion for a new trial based on the verdict being against the overwhelming weight of the evidence is as follows: “[w]hen reviewing a denial of a motion for a new trial, based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). “The evidence should be viewed in the light most favorable to the verdict.” Id. The reviewing court sits as a limited “thirteenth juror” and weighs the evidence which was presented to the jury. Id. The reviewing court, however, must be mindful that “the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (citing Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)).
¶ 31. Dendy was indicted for murder pursuant to Mississippi Code Annotated § 97-3-19 (Rev.2000). Therefore, the State was required to prove beyond a reasonable doubt that Dendy killed Windle wilfully, unlawfully, and feloniously, with malice aforethought or deliberate design in Monroe County. Miss.Code Ann. § 97-3-19. With these standards of review in mind, this Court must consider whether the evidence offered by the State had the requisite weight and sufficiency to prove beyond a reasonable doubt that Dendy unlawfully killed Windle in Monroe County with deliberate design or malice aforethought.
¶ 32. We begin our analysis with the undisputed issues of jurisdiction and cause of death. The record reflects undisputed testimony that the murder occurred in Monroe County. Furthermore, the state pathologist’s testimony reflects that there was a deliberate design on the part of Windle’s attacker to effect her death, based on the nature of the injuries she received. The state pathologist testified that Windle died as a result of two gunshot wounds to her back. The pathologist further testified that Windle had been shot while lying on her stomach on her bed and that her body contained no evidence of defensive wounds or a struggle.
¶ 33. The sole issue in dispute for the jury was the identity of the person who unlawfully, willfully, and feloniously killed Windle. The record reflects that the State presented expert testimony from the State’s pathologist as to the approximate time of Windle’s death. Dendy testified that he had dinner with Windle shortly before she was killed, and his inconsistent testimony regarding when he left the house could support the jury’s conclusion that he was present at the time she was shot. Shortly after the murder, Dendy tested positive for gunshot residue on the back of his right hand and the palm and back of his left hand. Dendy again offered inconsistent testimony as to why he had gunshot residue on his hands in an attempt to refute the State’s expert witness testimony that the residue on the back of Den-dy’s right hand was consistent with his having fired a pistol. In addition, the State presented expert witness testimony that the broken glass on the floor at the crime scene had been staged to indicate that there had been an intruder at the house the night Windle was murdered. The expert witness testified that the physical evidence at the crime scene was not consistent with a burglary and that money and guns were left alone even though in plain sight. Furthermore, the State offered multiple witnesses who testified that Dendy and Windle had financial problems which caused tensions between them and *617 that Dendy had called a former high school girlfriend repeatedly before Windle’s death. Finally, we emphasize that Dendy had every opportunity to present his theory of the case to the jury, and that each of the State’s witnesses was subjected to the crucible of cross-examination.
¶ 34. After examining the evidence in the light most favorable to the State, and after accepting as true all credible evidence found consistent with the defendant’s guilt, and after affording the prosecution the benefit of the sound and reasonable inferences which may be drawn from the evidence, we find that a fair and reasonable jury could conclude, based on the sufficiency of the evidence, that Dendy unlawfully murdered Windle with deliberate design in Monroe County. We conclude that the State offered sufficient evidence as to each element of the murder charge against Dendy.
¶35. Furthermore, after viewing the evidence in the light most favorable to the verdict, and after weighing the evidence as a limited “thirteenth juror,” we find that the evidence does not preponderate heavily against the verdict, and that the verdict does not sanction an unconscionable injustice. We agree that there were difficult issues of credibility for the jury to make. However, matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Drake v. State, 800 So.2d 508, 516(¶ 34) (Miss.2001). This Court’s role as a limited “thirteenth juror” is restricted to considering whether the jury’s resolution of the conflicting testimony amounted to an unconscionable injustice. In this case, after viewing the evidence in the light most favorable to the verdict, we are unable to conclude that the jury’s decision to find Dendy guilty of murder was beyond the weight of the evidence.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR.