# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00415-COA

**MALCOLM WARD A/K/A MALCOLM JAMAL WARD A/K/A MALCOLM J. WARD**                          APPELLANT

**v.**

**STATE OF MISSISSIPPI**                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2018 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/03/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Malcolm Ward challenges his convictions for armed robbery and possession of a firearm by a felon. The Forrest County Circuit Court sentenced him to twenty years' imprisonment with five years suspended for armed robbery and ten years' imprisonment for possession of a firearm by a felon, all in the custody of the Mississippi Department of Corrections (MDOC). His sentences are to run concurrently. He argues that: (1) the trial court erred in striking two prospective jurors for cause; and (2) the out-of-court and in-court identifications were inadmissible. We affirm the circuit court's judgment.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Kerin pulled into the carport of her Hattiesburg home late one summer evening. She sat inside her car for several minutes because she was exhausted from the workday. After this brief moment of peace, she stepped out of the car to walk inside and greet her family. But as she exited, she heard the bushes in her neighbor's yard rustling and footsteps quickly approaching her.

¶3.     A short man wearing a white bucket hat, a dark shirt, and light-colored shorts stepped into the light of the carport. He showed Kerin the gun that he held in his hand and commanded her, "Don't resist; give me your purse; don't resist; give me your purse." Kerin collapsed in front of the car, let her purse slide from her arm, and screamed, "Take it, take it[!]" The man took the purse and ran. Hearing her screams, Kerin's husband emerged from the home to help her, and they immediately called the police.

¶4.     Officer Thomas Robinson answered the dispatch and drove to Kerin's house. She described the man who robbed her to Officer Robinson, and he called in the description. Within several minutes, Officer Denton Sorrell had located a man matching Kerin's description walking on a nearby road. He approached the man—Malcolm Ward—and placed him in handcuffs. Officer Sorrell asked Ward if he carried any weapons, Ward said he did, and Officer Sorrell found a loaded silver handgun inside of Ward's backpack. Officer Sorrell did not, however, locate Kerin's stolen purse on Ward. In fact, the police later searched the surrounding area and never found it.

¶5.     Officer Sorrell took a picture of Ward with his cell phone and sent it to Officer

Robinson, who showed it to Kerin and her husband. Kerin identified the picture of Ward as the man who had robbed her, and her husband said that he had seen Ward walking down the street earlier that evening.

¶6.     A Forrest County grand jury indicted Ward for one count of armed robbery and one count of possession of a firearm by a felon. The parties stipulated that Ward had a prior felony conviction. Ward moved to suppress any identifications because the "activity on the part of the [p]olice is suggestive and should not be allowed." The circuit court denied the motion.

¶7.     Ward was convicted on both counts. The circuit court sentenced him to twenty years' imprisonment with five years suspended for armed robbery and ten years' imprisonment for unlawful possession, all in MDOC custody with the sentences to run concurrently. Ward moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. He appeals, arguing that (1) the circuit court erred when it struck two prospective jurors for cause; and (2) the out-of-court and in-court identifications were inadmissible.

## STANDARD OF REVIEW

¶8.     A juror who may be removed on a challenge for cause "is one against whom a cause for challenge exists such that the juror's impartiality at trial is likely affected." *Langston v. State*, 791 So. 2d 273, 281 (¶17) (Miss. Ct. App. 2001). Whether a potential juror can be fair and impartial is a judicial question reserved for the trial judge and will not be disturbed unless clearly wrong. *Dendy v. State*, 931 So. 2d 608, 611 (¶7) (Miss. Ct. App. 2005).

¶9.     Additionally, "[t]he standard of review for suppression hearing findings in pretrial identification cases is whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted." *Stewart v. State*, 131 So. 3d 569, 572 (¶7) (Miss. 2014) (quoting *Butler v. State*, 102 So. 3d 260, 264 (¶8) (Miss. 2012)). This Court "will not disturb a [trial] court's decision on the suppression of evidence unless there is an absence of substantial credible evidence supporting it." *Id*. "For an identification (made out of court or in court) to be excluded, it must be the result of an impermissibly suggestive lineup and the identification must be unreliable." *Id*.

## DISCUSSION

### I.     Did the circuit court err when it struck two prospective jurors for cause?

¶10.    During voir dire, the circuit court asked the prospective jurors whether any knew Ward, and two indicated that they did. The transcript reveals the following exchanges:

> Q.      17 and 27. Okay. [Prospective Juror Number 17], you know the defendant?
>
> A.      PROSPECTIVE JUROR NUMBER 17: I believe I do.
>
> Q.      Close personal friend or casual acquaintance?
>
> A.      PROSPECTIVE JUROR NUMBER 17: I think he was a member of my church formerly. I think he was in my youth group at Mount Zion Church.
>
> Q.      Okay. Anything about that that would affect you in the trial of this case?
>
> A.      PROSPECTIVE JUROR NUMBER 17: I don't think so.

4

Q.      [Prospective Juror Number 27], how do you know—close personal friend or casual acquaintance? How do you know him?

A.      PROSPECTIVE JUROR NUMBER 27: He's a neighbor—brother. He's a brother of a neighbor.

Q.      He lives in your neighborhood?

A.      PROSPECTIVE JUROR NUMBER 27: Yes.

Q.      Okay. Anything about that that would affect you in the trial of this case?

A.      PROSPECTIVE JUROR NUMBER 27: No, sir.

Q.      Okay. Both of y'all just keep that to yourselves. Okay.

¶11.    Later, the State challenged both prospective jurors for cause. Ward objected, but the circuit court nonetheless struck them both regardless. Ward now argues that the circuit court erred by striking those two prospective jurors.

¶12.    "Generally, a juror removed on a challenge for cause is one against whom a cause for challenge exists that would likely affect his competency or his impartiality at trial." *Berry v. State*, 703 So. 2d 269, 292 (¶85) (Miss. 1997). "We further recognize that 'selection of jurors is a judgment call peculiarly within the province of the circuit judge, and . . . we will not on appeal second guess that judgment in the absence of a record showing a clear abuse of discretion.'" *Townes v. State*, 93 So. 3d 895, 897 (¶7) (Miss. Ct. App. 2012) (quoting *Scott v. Ball*, 595 So. 2d 848, 850 (Miss. 1992)). The Mississippi Supreme Court has noted that "a defendant does not have a vested right to any particular juror but only the right to be tried by a fair and impartial jury." *Smith v. State*, 724 So. 2d 280, 328 (¶193) (Miss. 1998).

¶13.    Here, both prospective jurors indicated that they had prior relationships with Ward.

5

From the record, it is apparent that at least one of the juror's impartiality may have been affected by that prior relationship. The decision to strike one, neither, or both of the prospective jurors was within the purview of the circuit court's decision-making duties. It was merely "the duty of the [c]ourt to see that a competent, fair, and impartial jury is empaneled." *Miss. Power Co. v. Stribling*, 191 Miss. 832, 845, 3 So. 2d 807, 810 (1941). Furthermore, there is no showing of an abuse of discretion. Therefore, this issue is without merit.

## II.     Were the out-of-court and in-court identifications inadmissible?

¶14.    Ward alleges that the out-of-court and in-court identifications were tainted and unreliable because of an overly suggestive identification process and therefore inadmissible.

¶15.    The United States Supreme Court "has recognized . . . a due process check on the admission of eyewitness identification, *applicable when the police have arranged suggestive circumstances* leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012) (emphasis added). The Supreme Court has further held:

> Our decisions . . . turn on the presence of state action and aim to deter police from rigging identification procedures, for example, at a lineup, showup, or photograph array. When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

*Id.* at 232-33.

¶16.    Ward presented his argument to the circuit court that the identifications should be

6

inadmissible. "In practice, Mississippi tends to place a heavy burden on defendants who are contesting the propriety of a pretrial identification procedure." *Jones v. State*, 993 So. 2d 386, 393 (¶14) (Miss. Ct. App. 2008). Here, the court determined Ward did not meet that burden because there was no improper law enforcement activity and the police did not arrange suggestive circumstances to lead Kerin to identify Ward as the perpetrator. Instead, the court allowed Ward to "make [his] argument as the testimony [was] coming in . . . ."

¶17. Ward was then afforded the opportunity to dispute the identification with the numerous safeguards described in *Perry*, including through "vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id.* at 233.

¶18. But even if the out-of-court identification was suggestive, our caselaw permits the admission of an identification obtained during improper law enforcement activity if, "from a totality of the circumstances, the identification was reliable." *Stewart v. State*, 131 So. 3d 569, 572 (¶8) (Miss. 2014). To determine reliability, the court looks to the following five factor test as established by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972): (1) "the opportunity of the witness to view the criminal at the time of the crime"; (2) "the witness' degree of attention"; (3) "the accuracy of the witness' prior description of the criminal"; (4) "the level of certainty demonstrated by the witness at the confrontation"; and (5) "the length of time between the crime and the confrontation." *Butler v. State*, 102 So. 3d 260, 266 (¶14) (Miss. 2012).

¶19. Regarding the opportunity to view the criminal, the jury heard testimony that Kerin "[got] a good look at [Ward's face]" when "[h]e was right up under the light" of her carport. Furthermore, from the detailed description she provided Officer Robinson, it is clear that her degree of attention was high. Regarding the third factor, accuracy of the description, Officer Robinson testified that Kerin gave him a full and detailed description of her assailant when he arrived at the scene: "[Kerin] stated that it was a young black male wearing dark clothing and he had like a fishing-style hat. The term she kept on using was like a Gilligan hat with the floppy brim all the way around—a white hat—and a handgun and fled toward Broadway Drive." And Officer Sorrell testified that he had found Ward matching Kerin's description walking on a nearby road only several minutes after the description was called in. Furthermore, when Officer Sorrell apprehended Ward, he found a gun on his person. Finally, regarding the final two factors, Officer Robinson testified that when he showed Kerin and her husband the picture of Ward shortly after his apprehension, "[t]he victim stated that that was the person that had robbed her, and her husband stated that he had [seen] the same person probably an hour before the robbery took place walking in his neighborhood."

¶20. The circuit court did not err when it determined that there was no sign of improper law enforcement activity and allowed the out-of-court identification. Notwithstanding its lack of error here, even if we analyze the out-of-court identification under the *Biggers* factors, we find that the identification was reliable. Furthermore, because the out-of-court identification was not the result of improper law enforcement activity and was reliable, it could not have tainted the in-court identification. The issue, then, of whether the in-court identification was

8

also tainted, is moot. There was no abuse of discretion, and this issue is without merit.

## CONCLUSION

¶21.    We find that the circuit court did not err when it struck two prospective jurors for cause and that the out-of-court and in-court identifications were admissible. Thus, we affirm the circuit court's judgment to deny a new trial under the abuse-of-discretion standard.

¶22.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR.  J. WILSON, P.J., WESTBROOKS AND McDONALD, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; WESTBROOKS, J., JOINS IN PART.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶23.    Because Juror 27 emphatically agreed she could follow the law and be fair, she should have been allowed to serve as a juror.

¶24.    Under our law, "[a]ny person, otherwise competent, who will make oath that he [or she] is impartial in the case, shall be competent as a juror in any criminal case . . . ."  Miss. Code Ann. § 13-5-79 (Rev. 2012).  For we rightly presume jurors take their oaths seriously. In situations where a juror's eligibility is challenged but that juror guarantees their impartiality is unaffected, that guarantee warrants deference. *Patton v. State*, 248 So. 3d 763, 769 (¶37) (Miss. 2018); *Howell v. State*, 65 So. 641, 642 (Miss. 1914) ("It is certainly shown that they were impartial in the case, and did not desire to reach any result except that to which the evidence would conduct them.").

¶25.    Our Supreme Court has held that it is not necessary to remove a juror based on mere

associations or family relations. *Patton*, 248 So. 3d at 768 (¶34). The main question is not the nature of the relationship between jurors and the parties, but whether the juror's partiality has been affected by the relationship. *Ross v. State*, 16 So. 3d 47, 55 (¶13) (Miss. Ct. App. 2009).

¶26. "Generally a juror who may be removed on a challenge for cause is one against whom a cause for challenge exists that would likely effect his competency or his impartiality at trial." *Id*. When focusing on a juror's impartiality we look at two competing factors: (1) a "factor or circumstance which tends to indicate a potential for bias on the part of that juror," and (2) "the juror's promise that he or she can and will be impartial." *Id*.

¶27. For nearly seventy years we have held that such a simple connection does not necessitate an excusal for cause. In one applicable case, a juror indicated that he lived in the same community and belonged to the same church and lodge as a party. *Am. Creosote Works of La. v. Harp*, 60 So. 2d 514, 518 (Miss. 1952). That juror was not excluded from sitting on the jury panel because he stated under oath that this "relationship" would not influence his verdict. *Id.*

¶28. Similar to the juror in *Harp*, Juror 27's relationship with Ward did not require excusal for cause. The record tells us that Juror 27 merely knew Ward from her community. There was no further questioning into the depth of the vague knowledge the juror had of Ward. Based on this "relationship" Juror 27 was challenged and struck from the proceedings even though she expressly stated that the relationship would not affect her impartiality or her ability to follow the law. In 1952 we would have seated Juror 27, and we should have seated

10

her in 2017 as well.

¶29.    Unlike Juror 27, Juror 17's qualification could be seen as questionable. She expressed possibly knowing the defendant from her church and maybe a youth group. Likewise, her response left room for doubt. Because of this much more vague statement, removing Juror 17 was not "clearly wrong."

¶30.    The majority states that "[f]rom the record, it is apparent that at least one of the juror's impartiality may have been affected by that prior relationship." In my review of the exchange, I believe there is nothing that shows this effection.

¶31.    Because Juror 27 should have been seated, I respectfully concur in part and dissent in part.

**McDONALD, J., JOINS THIS OPINION.  WESTBROOKS, J., JOINS THIS OPINION IN PART.**