495 So.2d 1362 (1986)
Lucille Jenkins COOLEY
v.
STATE of Mississippi.
No. 55972.
Supreme Court of Mississippi.
October 15, 1986.
Guy M. Walker, Laurel, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Failure to comply with its obligations under our discovery rules is again the Achilles heel of the prosecution's effort to uphold a criminal conviction. Our rules require that, upon request of the accused, the prosecution must disclose a copy of the past criminal record of the accused, particularly where the prosecution intends to use that record for impeachment purposes. In this case where the accused has been charged with aggravated assault, the prosecution failed to disclose a twelve year old prior misdemeanor assault conviction and, notwithstanding, sought to impeach the accused therewith. This our rules do not allow.
Other questions presented concern the victim's testimony regarding her own injuries, the admission of a photograph of the gunshot wound suffered by the victim and a reverse discovery point. Because the case must be retried, we will discuss these other assignments of error briefly.

*1363 II.
The facts of this Jones County barroom brawl remain a morass. Complicating matters is the lack of clarity in the record about the physical layout of Pearl's Lounge, the scene of the shooting of Betty Kitchens by Lucille Jenkins Cooley on December 16, 1983. In general, Pearl's Lounge consists of two main rooms  a dancehall area and a bar area. There are two entrances from bar to dance area; there is one entrance/exit door into Pearl's Lounge from the outside street.
Betty Kitchens claims that as she and her husband sat at the bar, Lucille Cooley approached her, attempted to start an altercation, pulled a pistol from her bra, and was then removed by another patron to the other end of the bar, where people attempted to pacify Lucille Cooley. Betty Kitchens states that she and her husband attempted to leave, but that as they stepped aside the general entrance/exit door to Pearl's Lounge to allow newcomers to enter, Lucille Cooley appeared, coming through the barroom area, and shot Betty Kitchens in the leg. Betty Kitchens' version of the incident is supported by the testimony of her husband.
An apparently disinterested bystander witness corroborates Betty Kitchens' story with two exceptions: (1) Bystander says that Kitchens went to the dancehall area entranceway instead of to the general entrance/exit door of the lounge, and (2) Kitchens had a drink in her hand instead of a coat over her arm. The bystander testified that Kitchens held no knife and that Cooley shot Kitchens.
Lucille Cooley admits that she shot Betty Kitchens but claims that she acted in self-defense. Cooley testified that Kitchens threatened to cut Cooley's throat if Cooley did not stay away from Kitchens' boyfriend, a man with whom both women were apparently having an affair. When Cooley would not agree to stay away from the man, Cooley claims that Kitchens then pulled a knife on her. Cooley in turn pulled her .25 automatic to protect herself. Cooley states that she asked the lounge owner to detain Kitchens long enough for Cooley to get out of the lounge. Cooley testified that she then went into the dancehall area. Cooley contends that Kitchens blocked her exit from the lounge and kept coming toward her, attempting to cut her. Cooley claims she then shot Betty Kitchens in the leg in self-defense to stop her.
That Kitchens held a knife, described as a pocket knife, is supported by three witnesses. The credibility of one of these, a male sitting with Cooley in Pearl's Lounge on the evening in question, was impeached at trial with prior testimony he had given in a statement to police. His prior statement conflicted considerably with his testimony at trial. Of the two female witnesses who testified about the existence of a knife, one was shown to be acquainted with Lucille Cooley. In addition, the record preserves through Cooley's offer of proof that rejected potential witness Pearl Sauls, had she been allowed to testify, would have testified that Cooley left the bar area when Sauls ordered her to do so after the argument began and that Betty Kitchens, instead of staying where she was at the bar as ordered by Pearl Sauls, also entered the dancehall area from a different entrance from the entrance by which Lucille Cooley had entered the dancehall area.
Lucille Jenkins Cooley, Defendant below and Appellant here, was put to trial in the Circuit Court of the Second Judicial District of Jones County, Mississippi, on March 26, 1984, on the charge of the aggravated assault of Betty Kitchens. Miss. Code Ann. § 97-3-7(2)(b) (Supp. 1985). In due course the jury found Cooley guilty as charged in the indictment, whereupon the Circuit Court sentenced her to the custody of the Mississippi Department of Corrections for a period of fifteen years. Miss. Code Ann. § 97-3-7(2) (Supp. 1985). For the reasons set forth below, that conviction and sentence must be vacated and the matter remanded for a new trial.

III.
Cooley first complains that the Circuit Court erred in allowing Betty Kitchens, over Cooley's objection, to give allegedly *1364 hearsay testimony regarding the nature and extent of her injuries resulting from the Cooley-inflicted gunshot wound. Specifically, Kitchens testified that she was shot in the leg, that her sciatic nerve had been cut, that she was disabled and was scheduled to undergo a fourteen hour operation with only a twenty percent chance that she could walk normally thereafter. Without doubt Kitchens employed in her testimony terminology likely beyond her normal vocabulary. On the other hand, a holding that a witness may never use terms and ideas learned from others that would render hearsay practically everything we know.
The essence of the offense of aggravated assault is that the accused has knowingly caused bodily injury to another with a deadly weapon likely to produce death or serious bodily harm. In this setting it is competent for the victim to describe the nature and extent of the injuries she has received. Cf. Harbin v. State, 478 So.2d 796, 799, 800 (Miss. 1985). See Rule 401, Miss.R.Ev., eff. January 1, 1986. Defense counsel was certainly entitled to employ cross-examination to test Kitchens' understanding and the basis for the descriptive statements she made on direct examination. At trial's end that option remained unemployed.
The assignment of error is denied.

IV.
Cooley next charges error in the admission of a photograph of Kitchens' leg wound. She argues that the photograph had no evidentiary value and served the sole purpose of "inflaming the minds of the jury." West v. State, 218 Miss. 397, 408, 67 So.2d 366, 370 (1953). The Attorney General responds that the photograph is demonstrative of the locality and severity of the wound.
We have viewed the photograph and consider it to have far less capacity for unfair prejudice than many we have seen. We consider this assignment in the context of the proposition discussed above that the prosecution was obligated in order to succeed under this indictment to show infliction of a wound with a deadly weapon. The photograph was relevant to that end. See Rule 401, Miss.R.Ev., eff. January 1, 1986. In Groseclose v. State, 440 So.2d 297, 301 (Miss. 1983), we held that a single photograph, not inordinately gruesome, showing the position of the victim's body at the arrival of police officers, was admissible within the trial judge's discretion. This same view has been stated in Lewis v. State, 454 So.2d 1306, 1307 (Miss. 1984); Sharp v. State, 446 So.2d 1008, 1009 (Miss. 1984); and Edwards v. State, 413 So.2d 1007, 1011 (Miss. 1982). There being no basis for a belief that the probative value of the photograph here in controversy was substantially outweighed by the danger of unfair prejudice, (see Rule 403, Miss.R.Ev., eff. January 1, 1986) we hold that the assignment of error is without merit and should be denied.

V.
Cooley assigns as error the order of the Circuit Court that her witness, Pearl Sauls, not be allowed to testify. At trial it developed that Cooley had requested discovery pursuant to Rule 4.06, Unif.Crim.R.Cir.Ct. Prac. That request visited a similar obligation upon Cooley to make discovery. See Coates v. State, 495 So.2d 464, 467 (Miss. 1986). The Circuit Court refused to allow Sauls to testify because Cooley had not listed  and disclosed to the prosecution  Sauls' name as a witness who would be called at trial. Cooley's response was that she did not know of the availability of Sauls as a witness until well into the trial and, hence, could not be faulted for failure to make timely pre-trial disclosure.
In Coates v. State, cited above, we held in no uncertain terms that discovery obligations are reciprocal and that Rule 4.06 may be enforced against the defendant the same as against the prosecution. Because of the disposition we make of the case, it is unnecessary that the present assignment of error be expressly decided. Suffice it to say that, upon retrial, all will have had notice of the possibility of Sauls being a witness. Either side  the prosecution or *1365 the defense  may call Sauls as a witness as either may desire. For the moment it is sufficient to emphasize that what was said in Coates was intended to make clear that discovery is a two-way street, that defendants and their counsel are to take seriously their obligations to make discovery under Rule 4.06, and that our circuit courts, when confronted with defense discovery violations should judiciously and discretely effect sanctions within the authority afforded them by Rule 4.06.

VI.
The dispositive assignment of error concerns the prosecution's failure to make discovery. Our concern is the attempt of the district attorney to cross-examine Cooley regarding prior misdemeanor convictions, specifically including a twelve year old assault conviction, when the fact of that conviction had not been disclosed in pre-trial discovery.
Our legal context is provided by Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice which, in pertinent part, provides:
The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test and photograph upon request and without further order the following:
* * * * * *
(3) copy of the criminal record of the defendant, if proposed to be used to impeach;
We have held repeatedly that obligations emanating from this rule must be taken seriously. See, e.g., Foster v. State, 493 So.2d 1304, 1307 (Miss. 1986); Johnson v. State, 491 So.2d 834, 837 (Miss. 1986); Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986); Foster v. State, 484 So.2d 1009, 1010-11 (Miss. 1986); Ford v. State, 444 So.2d 841, 842-43 (Miss. 1984); cf. Coates v. State, supra.
On January 24, 1984, some two months prior to trial, Cooley's attorney filed a formal request for discovery designating among the items to be produced
12. The criminal records and any lists or summary reflecting criminal records of all persons whom the State intends to call as a witness in the trial of the named Defendant as well as such records pertaining to the Defendant, if any. [Emphasis added]
Without doubt, the combined effect of Rule 4.06(3) and the aforesaid discovery request obligated the prosecution to disclose to the defense counsel the criminal record of Lucille Cooley and any list or summary reflecting same.
At trial Lucille Cooley took the witness stand in her own defense. While on cross-examination, the district attorney asked Cooley if she had "ever been convicted of a misdemeanor, other than a traffic offense." Cooley answered yes and described "a domestic argument between myself and my husband." The district attorney then sought to impeach Cooley with at least two other misdemeanor convictions. First, he asked if she had been convicted on May 25, 1968, of "interfering with an officer." Second, he asked Cooley if she had been convicted on May 10, 1972, of "assault with a weapon." To each of these questions defense counsel objected. Upon the Circuit Court's overruling of the objections, Cooley answered each time "I don't remember."
The basis of the defense objections was the prosecution's failure to disclose the fact of these prior convictions in response to the discovery request. Apparently the prosecution had delivered to defense counsel a "rap sheet" which had not included these convictions. The following colloquy between and among the district attorney, defense counsel, Cooley and the trial judge sums up the matter:
Q. On May 10, 1972, were you convicted of assault with a weapon?
MR. WALKER:
To which we object 
A.  I do not remember.
MR. WALKER:
Just a minute. If the Court please, in discovery  and in the absence of the jury I would like to  we requested a rap sheet and there it is and nothing about anything like that.
THE COURT:
I can't take judicial notice of that.

*1366 MR. WALKER:
I know, but that is the reason I want to make my record.
THE COURT:
Overruled.
At the time of this trial prior misdemeanor convictions such as those involved here could legitimately be used to impeach a witness' credibility. Rule 609, Miss.Rules of Evidence, certainly changes the old rule but does so only for trials occurring after January 1, 1986. Rule 609 has no application to the case at bar.
Rule 6.04, Unif.Crim.R.Cir.Ct.Prac., however, was in full force and effect. That rule required in unequivocal language that the prosecution disclose, upon defense requests, a copy of the defendant's criminal record. The defense so requested. When the point arose at trial, defense counsel was not even allowed to make a record. This was error, as well as the trial court's refusal to sustain the defense objection to the questions regarding the undisclosed misdemeanors.[1]
While Rule 4.06(3) itself is the source of the obligation the prosecution failed to comply with, the apparent reason for the rule should also be noted. If one on trial for her liberty is going to be subjected to impeachment of her credibility on grounds of prior convictions, fairness dictates that she be advised of those prior convictions in advance of trial. This is particularly so where the prior convictions are misdemeanors twelve and sixteen years of age. The prejudicial effect of a bumbling "I don't remember" answer may well have been greater than the suggestion that Cooley had been convicted of an assault charge twelve years previously. Cooley made a straightforward admission of one prior conviction. Quite likely if she had known of the other prior convictions, similar admissions would have been made. Of course, such admissions are what  and all  the prosecution is entitled to show. Ellis & Williams, Mississippi Evidence §§ 4-6 pp. 42-43.
We note that the prosecution at no point produced for the record any proof that Cooley had been convicted of interfering with an officer or resisting arrest on May 25, 1968, or that she was convicted of assault with a weapon on May 20, 1972. Although we do not infer that the prosecution was asking these questions without any basis for believing that Cooley had indeed been convicted of these offenses, we think it appropriate to reiterate that the prosecuting attorney risks reversal if he asks questions about prior convictions where he has no reasonable basis for believing that the convictions have in fact occurred. See Malone v. State, 406 So.2d 37, 39 (Miss. 1981); Johns v. State, 255 So.2d 322, 324 (Miss. 1971).
We have considered whether the present matter should be treated as harmless error. See Rule 11, Miss.Sup.Ct.Rules. Because Lucille Cooley was on trial for the charge of aggravated assault, the suggestion before the jury that she had been convicted of assault with a weapon on a previous occasion would hardly escape the notice of an alert and reasonable juror. In a context where Cooley shot Kitchens and is asserting a self-defense theory, the suggestion of this prior conviction seems even more likely to have been of substantial impact. We cannot say with any reasonable level of confidence that the error was harmless.
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] The brief filed by the Attorney General in no way takes issue with defense counsel's factual assertion that the prior misdemeanor convictions had not been disclosed. Likewise, the district attorney at trial made no claim that his office had in fact made the required disclosure.