BARNES, J,
 

 for the Court.
 

 ¶ 1. Shirley Ross was convicted of aggravated assault after a jury trial in the Yazoo County Circuit Court. Ross now appeals her conviction and sentence of ten years in the custody of the Mississippi Department of Corrections (MDOC). Finding no error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Ross and her husband, Walter Ross (Walter), were married in 1999. The couple continually experienced marital strife due to financial and intimacy issues. On June 19, 2005, which was coincidentally “Father’s Day,” Ross and Walter went to Sunday School together. Afterwards, Walter went to visit his family in Pickens; Ross stayed at home. When Walter returned, Ross was leaving to attend another church program. Ross claimed that, when she returned, Walter was upset with her and intentionally spilled tea on the food she had brought home to eat. Walter told her that he was going to church “out on Fifteenth Street” and asked Ross to accompany him. She declined; so he left.
 

 ¶ 3. While Walter was gone, Ross proceeded to heat grease in an electric fryer. She also boiled water in an electric roasting pan. Ross testified that the grease was to cook shrimp and that the water was for her bath.
 
 [1]
 
 Walter later testified that they did not have any shrimp and that, although he had repeatedly heated water in this manner in order to bathe, Ross had never done so as she went to her mother’s house to bathe. After Walter returned home the second time, the couple resumed their argument. Walter went to the bedroom, removed his shirt, and headed back to the kitchen. Ross first poured the grease and then the scalding water on Walter. Both Ross and Walter fell to the floor, fighting and rolling around in the grease and water. Walter ran from the house and stumbled into the neighbor’s yard for help; Ross followed him in their truck. The neighbor, Adam Selby, Jr., who had run outside to help Walter, testified that he heard someone in a truck drive by the yard and yell, “I’m going to get you!” before the truck sped off down the street. Ross contradicted this testimony stating that she shouted, “Call 9-1-1.” Ross flagged down an off-duty police officer and told him what had happened. The officer directed her to the nearest police station, where she made a report. Ross and Walter were sent to King’s Daughters Hospital for treatment of their injuries. Ross sustained minor injuries to her left arm and right finger. Walter, however, sustained third-degree burns on his head, chest, and back and was transported to the Vanderbilt University Burn Center in Nashville, Tennessee, Walter was hospitalized for over three months, received skin grafts, and was unconscious for five to six weeks. At trial, Walter testified that he still required rehabilitative treatment for his injuries and had suffered permanent nerve damage to his arm, chest, and legs. Ross, on the other hand, claimed that the pictures of Walter’s injuries were “nothing but a sympathy trick.” Ross told the deputy at the hospital that Walter had verbally and physically abused her, which is why she threw the grease and scalding water on him. Ross’s adult children testified that Walter had been physically vio
 
 *52
 
 lent with them. However, testimony at trial showed that Walter was physical with Ross only once before, approximately four years prior to this incident.
 

 ¶ 4. Ross was indicted on two counts of aggravated assault. Prior to trial, Ross filed a motion to dismiss Count Two of the indictment, which the circuit court granted, finding that the charges did not constitute two separate offenses. After a jury trial, Ross was convicted on April 13, 2006, of aggravated assault, and sentenced to ten years in the custody of the MDOC.
 

 ¶ 5. On April 20, 2006, Ross filed a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial, through her trial counsel, Henry Clay III. On the same day, attorney Lisa Ross also filed an “Entry of Appearance” as counsel of record for Ross and a request for extension of time to file post-trial motions.
 
 [2]
 
 On May 1, 2006, the circuit court entered an order denying Ross’s motion for JNOV or, alternatively, a new trial, filed by Ross’s trial counsel. Ross filed a second motion for a new trial on August 3, 2006, which raised the issues we now address on appeal. The circuit judge denied this motion on October 18, 2007, and Ross filed her notice of appeal the same day.
 

 JURISDICTION
 

 ¶ 6. Before we analyze Ross’s claims, we must first address the issue of whether this Court has the authority to consider this appeal. Although the State has not questioned the issue of appellate jurisdiction, it is incumbent upon this Court to assure that such jurisdiction exists. Rule 4(e) of the Mississippi Rules of Appellate Procedure instructs that a criminal defendant who makes a “timely motion” for a judgment of acquittal notwithstanding the verdict or a motion for new trial, under the Uniform Rules of Circuit and County Court Practice, has thirty days from the entry of the order denying such motion to file his notice of appeal. M.R.A.P. 4(e). In order for the time for notice of appeal to be tolled, the post-trial motion for a new trial must be filed within ten days of the entry of the judgment or order from which appeal is taken.
 
 Williams v. State, 4
 
 So.3d 388, 391(¶ 8) (Miss.Ct.App.2009);
 
 see also Rogers v. State,
 
 829 So.2d 1287, 1288(¶ 4) (Miss.Ct.App.2002) (under Rule 10.05 of the Uniform Rules of Circuit and County Court, a motion for a new trial must be filed within ten days of the entry of judgment). While there is no express provision in the Uniform Rules of Circuit and County Court regarding the filing of a motion for a JNOV, the Mississippi Supreme Court has found that a motion for a JNOV, as it relates to a criminal case, is untimely where filed beyond the ten-day limit for a motion for new trial and beyond the term of the court.
 
 McGraw v. State,
 
 688 So.2d 764, 770 (Miss.1997). The March 2006 term of the Yazoo County Circuit Court began on the third Monday of March, March 20, 2006, and ran for four weeks until April 14, 2006.
 
 [3]
 
 Ross was convicted and sentenced on April 13, 2006. Therefore, the term of court actually expired prior to the ten-day limit for filing a motion for new trial.
 

 ¶ 7. There is no question that Ross’s original motion for a JNOV or, alternatively, a new trial, which was filed by Ross’s trial counsel, on April 20, 2006, seven days after the entry of judgment, was timely filed. However, Ross’s appellate counsel failed to file a timely notice of appeal after
 
 *53
 
 the circuit court’s denial of the first post-trial motion. Instead of filing a notice of appeal within the thirty-day time requirement under Rule 4 of the Mississippi Rules of Appellate Procedure, Ross filed three separate requests for additional time in which to file additional post-trial motions. The requests were filed on April 20, 2006, May 17, 2006, and June 21, 2006, respectively.
 
 [4]
 
 The circuit court granted the first two requests; however, we find no evidence in the record that the court entered an order on the last request. Further, we find no authority that the circuit court has any discretion to extend time limits for filing a motion for a JNOV or for a new trial. As previously stated, Rule 10.05 requires that a motion for a new trial
 
 must
 
 be made within ten days of the judgment, and in the case of a motion for JNOV, the motion must be made either within the ten days or by the end of the term of court. Further, the circuit judge did not have the authority to extend the thirty-day requirement for filing a notice of appeal in the case at bar. In
 
 Draper v. City of Flowood,
 
 736 So.2d 512, 513(¶ 14) (Miss.Ct.App.1999), this Court found that nothing in the rules “authorize^] the circuit court to extend or reopen the time to appeal except for certain limited authority in Rule 4(g) and 4(h)” of the Mississippi Rules of Appellate Procedure, neither of which are applicable in this case.
 
 [5]
 
 Consequently, the failure by Ross to file a timely notice of appeal would typically bar this appeal from review.
 

 ¶8. However, under Rule 2(c) of the Mississippi Rules of Appellate Procedure, this Court may suspend the rules in the interest of expediting decision, or for other good cause shown, in cases where the defendant who is convicted, “through no fault of his own[,] is effectively denied his right to perfect his appeal within the time prescribed by law by the acts of his attorney or the trial court.”
 
 Dorsey v. State,
 
 986 So.2d 1080, 1084(¶ 12) (Miss.Ct.App.2008) (citation omitted). The Mississippi Supreme Court has stated that: “We may suspend Rules 2 and 4 ‘when justice demands’ to allow an out-of-time appeal in criminal cases.”
 
 McGruder v. State,
 
 886 So.2d 1, 2(¶ 4) (Miss.2003) (citing
 
 Fair v. State,
 
 571 So.2d 965, 966 (Miss.1990)).
 
 [6]
 
 While we find no circumstances that would indicate good cause in this case, the result of dismissing this appeal for lack of jurisdiction would most likely be a motion for post-conviction relief filed by Ross citing ineffective assistance of appellate counsel based on her failure to file a timely notice of appeal. Therefore, in the interest of “expediting decision” pursuant to Rule 2(c), we hereby suspend the rules and review Ross’s out-of-time appeal and assignments of error.
 

 I. Whether the circuit court committed reversible error in allowing the prosecutor to strike members of the venire in the absence of a showing that the jurors were in
 
 *54
 
 competent and would not follow the instructions of the court.
 

 ¶ 9. Ross argues that the circuit court allowed the State to strike jurors for cause where the record failed to establish that the jurors were incompetent and/or refused to follow the instructions of the court. Ross’s trial counsel failed to object to two of the three challenges for cause at trial that Ross now asserts as error, which procedurally bars those challenges on appeal. “Failure to object at trial acts as a procedural bar in an appeal.”
 
 Jackson v. State,
 
 832 So.2d 579, 581(¶ 3) (Miss.Ct.App.2002) (citing
 
 Carr v. State,
 
 655 So.2d 824, 853 (Miss.1995)). However, as defense counsel did object to the challenge for cause as to Juror No. 7, we will address that exclusion on the merits.
 

 ¶ 10. A circuit judge “has wide discretion in determining whether to excuse any prospective juror, including one challenged for cause.”
 
 Smith v. State,
 
 989 So.2d 973, 983-84(¶ 36) (Miss.Ct.App.2008). “A juror who may be removed on a challenge for cause is one against whom a cause for challenge exists that would likely affect his competency or impartiality at trial.”
 
 Hervey v. State,
 
 764 So.2d 457, 461(¶ 11) (Miss.Ct.App.2000) (quoting
 
 Berry v. State,
 
 703 So.2d 269, 292(¶ 85) (Miss.1997)). The Mississippi Supreme Court has stated that “[if] the evidence is conflicting on the question of whether or not the defendant could receive a fair and impartial trial,” deference will be given “to the considered opinion of the trial judge.”
 
 Welde v. State,
 
 3 So.3d 113, 119(¶ 29) (Miss.2009) (citing
 
 Burrell v. State,
 
 613 So.2d 1186, 1190 (Miss.1993)). “Because the trial judge hears and sees the individual jurors, he is in the better position to evaluate their responses and determine whether or not they should be excluded for cause.”
 
 Peterson v. State,
 
 740 So.2d 940, 949(¶ 28) (Miss.Ct.App.1999) (citation omitted).
 

 ¶ 11. First, Ross claims that Juror No. 7-Krystal Morton, an African American female-was erroneously excluded for cause based on her statement that she attended night school and that she had a research paper due that week. Defense counsel objected to the trial court’s granting of the cause challenge for Morton. The record reflects that Morton was forthright about the fact that she would be distracted and thinking about her upcoming assignment, rather than focusing her attention on the trial. The Mississippi Supreme Court has stated that “[njeither the State nor the defense is properly served by a juror who cannot confirm that she would pay attention while the evidence was presented and could not therefore fairly deliberate the issues.”
 
 Walker v. State,
 
 671 So.2d 581, 623 (Miss.1995). Therefore, we find no error in the circuit court’s granting the State’s challenge for cause as to Morton.
 

 ¶ 12. As already noted by this Court, the remaining challenges for cause, that Ross claims were in error, were not objected to at trial by counsel and are procedurally barred. Ross contends that this Court should review this issue under the plain-error doctrine as it affects Ross’s constitutional right to a fair and impartial jury. Procedural bar notwithstanding, we find no merit to Ross’s claims.
 

 ¶ 13. Ross argues that Juror No. 22 — Bobbie Hubbard, an African American female — was also improperly excluded for cause since Hubbard stated that she could be impartial despite the fact that she knew both Ross and Walter. Hubbard was acquainted with Ross as Hubbard’s daughter had once dated Ross’s son. Also, Hubbard’s husband and Walter, the victim, were “very, very close friends.” Ross argues that Hubbard was not a relative, but
 
 *55
 
 a mere acquaintance of the family; therefore, she should not have been excluded. However, the type of relationship between the jurors and the parties is not the central issue but, rather, whether any such relationship could affect the juror’s partiality. “Generally a juror who may be removed on a challenge for cause is one against whom a cause for challenge exists that would likely effect his competency or his impartiality at trial.”
 
 Billiot v. State,
 
 454 So.2d 445, 457 (Miss.1984). Two competing forces come into play in determining the impartiality of a juror: (1) a “factor or circumstance which tends to indicate a potential for bias on the part of that juror[,]” and (2) “the juror’s promise that he or she can and will be impartial.”
 
 Heaney v. Hewes,
 
 8 So.3d 221, 226(¶ 17) (Miss.Ct.App.2008) (citing
 
 Hamilton v. Hammons,
 
 792 So.2d 956, 963(¶ 34) (Miss.2001) (overruled on other grounds)). This Court stated:
 

 To the extent that any juror, because of his relationship to one of the parties, his occupation, his past experience, or whatever, would normally lean in favor of one of the parties, or be biased against the other, or one’s claim or the other’s defense in the lawsuit, to this extent, of course, his ability to be fair and impartial is impaired. It should also be borne in mind that jurors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference.... These varied imponderables make selection of jurors a judgment call peculiarly within the province of the circuit judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion.
 

 Id.
 
 at 226-27(¶ 17). In
 
 Poe v. State,
 
 739 So.2d 405, 409(¶ 14) (Miss.Ct.App.1999), this Court upheld challenges for cause where one juror had attended school with the defendant and was friends with the defendant’s brother, and another juror’s son was a first cousin to the defendant. Likewise, in
 
 Coverson v. State,
 
 617 So.2d 642, 645-46 (Miss.1993), the supreme court upheld the trial court’s grant of challenges for cause based on the jurors’ long-time friendships with the defendant.
 

 ¶ 14. In the present case, the State reasoned that Hubbard was very familiar with the family and was probably “too close to the case” to be impartial. Defense counsel likely came to the same conclusion as the juror’s husband was a “very, very close friend” of the victim, Walter. The judge has “broad discretion to determine whether a prospective juror can be impartial — notwithstanding the juror’s admission under oath that he or she can be impartial.”
 
 Id.
 
 at 646. We find no error in the circuit court’s grant of the State’s challenge for cause based upon the fact that Hubbard was “too close to the case.”
 

 ¶ 15. Lastly, Ross argues that it was error for the circuit court judge to allow the State to challenge Juror No. 31 — -Roger Smith, an African American male — who was excluded because he “laid completely back in his chair, wouldn’t respond to the question [by counsel].” The State further commented that “[he] was just acting odd.” In addition, Smith’s brother was married to Ross’s cousin. Although Smith said he did not have contact with Ross on a regular basis and could be impartial, he was dismissed for cause. However, Smith’s perceived attitude at trial obviously caused the State concern as to whether Smith could be cooperative and impartial, and the circuit court was well within its right to take that factor, along with a distant family relationship, into ac
 
 *56
 
 count. Therefore, we find no error in the circuit court’s exclusion of Smith for cause.
 

 ¶ 16. The Mississippi Supreme Court has called it an “important and long-established maxim ... that a defendant has no right to have
 
 specific
 
 prospective jurors try his or her case ... [and] cannot complain on appeal of a particular exclusion if the end result was a jury composed of fair and impartial jurors.”
 
 Coverson,
 
 617 So.2d at 646. We find that the challenges to Jurors No. 7, 22, and 31 were valid challenges for cause and did not constitute additional peremptory challenges by the State as argued by Ross on appeal.
 

 II. Whether the circuit court committed reversible error for its failure to make a sua sponte ruling that the State violated
 
 Batson
 
 by using its challenges to strike African American females from the jury.
 

 ¶ 17. Ross, who is an African American female, claims that the State violated
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by purposely using its peremptory challenges to remove African American females from the venire. The jury was composed of six white females, three African American males, and three white males. Two white females were seated as alternates.
 

 ¶ 18. In
 
 Batson,
 
 the United States Supreme Court stated that racial discrimination through the use of peremptory strikes was prohibited.
 
 Id.
 
 at 89, 106 S.Ct. 1712. “The
 
 Batson
 
 rationale has [also] been extended to [include] gender discrimination.”
 
 Harper v. State,
 
 887 So.2d 817, 827(¶ 44) (Miss.Ct.App.2004). In order to bring a
 
 Batson
 
 challenge, the defendant is first required to make a pri-ma facie showing that the prosecutor has exercised peremptory challenges on the basis of race or gender.
 
 Brawner v. State,
 
 872 So.2d 1, 9-10 (¶¶ 25, 26) (Miss.2004). Then, “if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral [or gender-neutral] explanation for striking the jurors in question.”
 
 Id.
 
 The defendant may rebut any “prosecutorial explanations” .... [and] the circuit court must [then] determine whether the defendant has carried his burden of proving purposeful discrimination.
 
 Id.
 
 at 9(¶ 25).
 

 ¶ 19. In the ease before us, however, Ross’s counsel failed to object to any peremptory challenges at trial; consequently, he made no prima facie showing that the State’s peremptory challenges were based on the jurors’ race or gender. The Mississippi Supreme Court has stated that “a party who fails to object to the jury’s composition before it is empaneled waives any right to complain thereafter.”
 
 Thorson v. State,
 
 895 So.2d 85, 118(¶ 81) (Miss.2004) (citations omitted). Therefore, this assignment of error is procedurally barred.
 

 ¶ 20. Ross claims that the circuit court judge should have issued a sua sponte finding that the State violated
 
 Batson.
 
 We find this particular argument unpersuasive. The Mississippi Supreme Court has held that “a trial judge does not have the authority to invoke a
 
 Batson
 
 hearing on his own initiative,’ without the opposing party first making a prima facie showing of discriminatory purpose.”
 
 Brawner,
 
 872 So.2d at 11(¶ 28) (citing
 
 Stewart v. State,
 
 662 So.2d 552, 559 (Miss.1995)). Accordingly, we reject Ross’s claim of error by the circuit court.
 

 III. Whether the circuit court committed reversible error in failing to declare a mistrial based upon Walter’s testimony.
 

 ¶ 21. Ross contends that the circuit court erred in failing to grant a mistrial sua sponte upon Walter’s testimony during direct examination that he “died
 
 *57
 
 two times.” Ross’s counsel failed to object to this testimony. The failure to object to testimony at trial “waives any assignment of error on appeal.”
 
 Johnson v. State, 477
 
 So.2d 196, 214 (Miss.1985). Therefore, this issue is also proeedurally barred on appeal.
 

 ¶ 22. Procedural bar notwithstanding, we find that Walter’s testimony was not sufficient to warrant a declaration of a mistrial by the circuit court upon its own motion. “The standard of review for a trial court’s decision regarding whether to grant a mistrial is abuse of discretion.”
 
 McDonald v. State,
 
 881 So.2d 895, 902(¶ 28) (Miss.Ct.App.2004) (citing
 
 Caston v. State,
 
 823 So.2d 473, 492(¶ 54) (Miss.2002)). Rule 3.12 of the Uniform Rules of Circuit and County Court states that a trial court may, upon its own motion, declare a mistrial if “[t]he trial cannot proceed in conformity with law; or [i]t appears there is no reasonable probability of the jury’s agreement upon a verdict.” Ross has provided no evidence that Walter’s testimony that he died twice prevented the trial from proceeding “in conformity with law” or that it would prevent the jury from agreeing on a verdict.
 

 ¶ 23. Further, the Mississippi Supreme Court has held that as “the essence of the offense of aggravated assault is that the accused has knowingly caused bodily injury to another with a deadly weapon likely to produce death or serious bodily harm[J .... it is competent for the victim to describe the nature and extent of the injuries [h]e has received.”
 
 Ford v. State,
 
 975 So.2d 859, 866(¶ 21) (Miss.2008) (quoting
 
 Cooley v. State,
 
 495 So.2d 1362, 1364 (Miss.1986)). “Likewise, medical testimony on the extent of an injury is relevant to proving an essential element of aggravated assault.”
 
 Id.
 
 Walter’s testimony that he “died two times” was merely in response to questions regarding his injuries and treatment. Obviously, the jury could see that Walter was not dead. Therefore, as the testimony was not so egregious as to warrant the declaration of a mistrial by the circuit judge, we find that this issue is without merit.
 

 IV. Whether Ross’s trial counsel rendered ineffective assistance.
 

 ¶ 24. Ross claims that her trial counsel’s performance was ineffective based on several alleged errors. “ ‘Inadequacy of counsel’ refers to representation that is so lacking in competence that the trial judge has the duty to correct it so as to prevent a mockery of justice.”
 
 Colenburg v. State,
 
 735 So.2d 1099, 1102(¶ 8) (Miss.Ct.App.1999) (citing
 
 Parham v. State,
 
 229 So.2d 582, 583 (Miss.1969)). Considering “the merits of a claim of ineffective assistance of counself,]” which has been “raised for the first time on direct appeal, ... is unusual” as this Court is “limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim.”
 
 Harris v. State,
 
 979 So.2d 721, 729(¶ 23) (Miss.Ct.App.2008) (quoting
 
 Wynn v. State,
 
 964 So.2d 1196, 1200(¶ 9) (Miss.Ct.App.2007)). “[I]f [we] can determine from the record that counsel was ineffective, then it should have been apparent to the presiding judge, who had the duty ... to declare a mistrial or order a new trial sua sponte.”
 
 Colenburg,
 
 735 So.2d at 1102(¶ 8).
 

 ¶ 25. “The standard of review for ineffective assistance of counsel claims is the two-part test of
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a showing that (1) counsel’s performance was deficient and (2) that the deficiency prejudiced the defense.”
 
 Ellis v. State,
 
 952 So.2d 251, 253(¶ 9) (Miss.Ct.App.2006). Therefore, Ross must show that trial counsel “made errors so serious that he was
 
 *58
 
 not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment ... [and] that counsel’s errors deprived [her] of a fair trial with reliable results.”
 
 Colenburg,
 
 735 So.2d at 1103(¶ 9).
 

 A. Failure to voir dire jurors regarding aggravated-assault experience.
 

 ¶ 26. Ross points to defense counsel’s failure to voir dire jurors to determine whether the jurors or their family members had been accused of, or were victims of, aggravated assault. “Deciding what questions to ask during voir dire is left largely up to the attorney ... [and] is [considered] a matter of trial strategy.”
 
 Price v. State,
 
 749 So.2d 1188, 1199(¶ 42) (Miss.Ct.App.1999). A complaint regarding counsel’s failure to ask certain questions, or make certain objections, falls within the ambit of trial strategy.
 
 Houston v. State,
 
 887 So.2d 808, 815(¶ 34) (Miss.Ct.App.2004) (citing
 
 Cole v. State,
 
 666 So.2d 767, 777 (Miss.1995)). As this Court generally defers to counsel’s judgment at trial, we are reluctant to define counsel’s trial strategy as ineffective assistance of counsel in such matters.
 
 Id.
 
 Accordingly, we find that counsel’s failure to ask the venire about their involvement with aggravated-assault crimes did not constitute deficient performance.
 
 [7]
 

 B. Failure by counsel to object to challenges for cause.
 

 ¶ 27. Ross contends that defense counsel was deficient based on his failure to show the circuit court that there was not sufficient proof in the record to support the exclusion
 
 of
 
 Morton, Hubbard, and Smith, for cause. As we have already found no error in the exclusion of these three jurors, this assignment of error is moot.
 

 C.Failure to object to State’s peremptory challenges.
 

 ¶ 28. Ross also claims that defense counsel’s performance was deficient based on his failure to object to the State’s peremptory challenges as they constituted
 
 Batson
 
 violations. Ross was not entitled to a specific racial and gender composition in the selected jury.
 
 See Le v. State,
 
 913 So.2d 913, 924(¶ 21) (Miss.2005) (a defendant is “not entitled to a jury of any particular composition”) (quoting
 
 Taylor v. Louisiana,
 
 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975));
 
 see also Gathings v. State,
 
 822 So.2d 266, 272(¶ 21) (Miss.2002) (a defendant is “not entitled to a given percentage of jury members of his own race”). Rather, “[t]he focus of the
 
 Batson
 
 inquiry is on the purposeful discrimination in a party’s use of peremptory challenges, not on the ultimate racial composition of the jury.”
 
 Berry v. State,
 
 728 So.2d 568, 572(¶ 11) (Miss.1999). We have compared the transcript of the jury selection with the handwritten notations found in the record
 
 [8]
 
 and find no prima facie showing of race or gender discrimination in the composition of the jury. Ross, in fact, makes no such claim. Rather, she claims the State purposefully discriminated against a specific race/gender combi
 
 *59
 
 nation based on the fact that Ross is an African American female. It is when the record is reviewed looking at the combination of both the race and gender of the jurors that a pattern begins to emerge.
 
 [9]
 

 ¶ 29. Ross has not cited us any authority that
 
 Batson
 
 applies to combined race-gender groups, and the State has failed to address this issue on its merits, relying on its procedural argument. After independent research by this Court, we find that the United States Supreme Court has not addressed this issue of whether combined race-gender groups are cognizable under
 
 Batson,
 
 but we do find that it is a developing and divisive issue in the state courts.
 

 ¶ 30. Some state courts have “recognized the existence of combined race-gender groups as discrete groups deserving of protections similar to those extended to discrete groups defined exclusively by race or gender.”
 
 Commonwealth v. Jordan,
 
 439 Mass. 47, 785 N.E.2d 368, 378-79 (2003); see,
 
 e.g., State of Hawaii v. Daniels,
 
 109 Hawai'i 1,122 P.3d 796, 801 (2005) (“Caucasian males constitute a cognizable
 
 Batson
 
 group”);
 
 State of Utah v. Shepherd,
 
 989 P.2d 503, 511 n. 4 (Utah App.1999) (trial court’s assumption that “white males are not a protected, cognizable group” was erroneous);
 
 People v. Garcia,
 
 217 A.D.2d 119, 122, 636 N.Y.S.2d 370 (1995) (subjecting jurors to peremptory challenge merely because they are black females is a violation of equal protection rights);
 
 People v. Motton,
 
 39 Cal.3d 596, 217 Cal.Rptr. 416, 704 P.2d 176, 181 (1985) (for purposes of determining whether a group has been discriminatorily excluded from a jury, black females are considered a cognizable group). However, the Illinois Supreme Court, in
 
 People v. Rivera,
 
 221 Ill.2d 481, 304 Ill.Dec. 315, 852 N.E.2d 771, 779-80 (2006), declined to “expand the
 
 Bat-son
 
 rule to embrace the simultaneous consideration of different racial or ethnic groups.”
 

 ¶ 31. As this is a case of first impression for the Mississippi courts, in order for Ross to prevail on her claim, she would have to establish that Mississippi should expand
 
 Batson
 
 to combined race-gender groups, and also establish that trial counsel’s failure to raise this issue of first impression constitutes ineffective assistance of counsel. Ross has not provided this Court with any authority to this effect. An appellant has a duty “to provide authority and support of an assignment!,]” and if he fails to do so, we are not obliged to consider the issue.
 
 Berry v. State,
 
 859 So.2d 399, 407(¶ 32) (Miss.Ct.App.2003) (citation omitted). Accordingly, Ross is procedurally barred from raising this issue.
 

 ¶ 32. Moreover, it is apparent from our independent review that, even from a national perspective, whether trial counsel is ineffective for faffing to assert an issue of first impression is not a matter that has been widely or thoroughly discussed by the courts. The Indiana Supreme Court has found “that appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in existing law .... [or for] failure to argue legal reasoning of cases not yet decided at the time of appeal.”
 
 Reed v. State,
 
 856 N.E.2d 1189, 1197 (Ind.2006);
 
 see also State of Wisconsin v. McMahon,
 
 186
 
 *60
 
 Wis.2d 68, 519 N.W.2d 621, 628 (Ct.App.1994) (“[cjounsel is not required to object and argue a point of law that is unsettled”). As the area of law dealing with race-gender combinations under
 
 Batson
 
 is clearly unsettled, we find that counsel’s failure to raise a
 
 Batson
 
 challenge as to the exclusion of African American females from the jury did not constitute deficient performance, and we reject Ross’s claim of ineffective assistance of counsel as to this issue.
 

 ¶ 33. Lastly, “[tjhe decision whether to assert a
 
 Batson
 
 challenge is part of the attorney’s trial strategy[,j and this Court must defer to the attorney’s discretion.”
 
 Sanders v. State,
 
 825 So.2d 53, 57(¶ 6) (Miss.Ct.App.2002). “[A]n attorney’s decision' not to make a
 
 Batson
 
 challenge does not amount to ineffective assistance of counsel absent a showing of prejudice to the defendant.”
 
 Turner v. State,
 
 953 So.2d 1063, 1070(¶ 21) (Miss.2007). The State removed the four black females from the venire; Ross’s trial counsel exercised all of Ross’s peremptory challenges to exclude males from the jury, including four
 
 of the
 
 seven black males tendered. Ross’s trial counsel’s failure to raise a
 
 Batson
 
 challenge may have been a conscious decision to avoid any scrutiny of his removal of males, particularly black males, from the jury. We defer to trial counsel’s discretion as to whether to assert a
 
 Batson
 
 challenge, especially where Ross has not shown that counsel’s failure to assert such has prejudiced her in any way.
 
 See Smith v. State,
 
 877 So.2d 369, 383-84(¶ 37) (Miss.2004) (opinion that, had there been an African American male on the jury, it was more likely than not that defendant would have received a life sentence was “theoretical and statistical conjecture ... simply not sufficient to show deficient performance resulting in prejudice”).
 

 D. Failure to object and move for mistrial based upon Walter’s testimony.
 

 ¶34. Ross argues that defense counsel’s performance was ineffective based on his failure to object and move for a mistrial when Walter testified that he “died two times.” Again, as we have found that Walter’s testimony that he died twice did not warrant a mistrial, we find no deficiency in defense counsel’s failure to object to such testimony. Ross also claims that counsel had medical records in his possession with which he could have impeached Walter regarding this particular testimony. However, no such records are in the record before us, and Ross has failed to show that the records indicate that Walter’s heart did not stop twice so as to lead to Walter’s lay opinion that he “died” twice. She merely asserts that counsel should have challenged Walter’s testimony with the records.
 

 ¶ 35. In an appellate review, we limit our inquiry to those facts “contained strictly in the record, and not upon mere assertions in [the] briefs.”
 
 Ward v. State, 935
 
 So.2d 1047, 1057(¶ 29) (Miss.Ct.App.2005) (citation omitted). As previously noted, in reviewing a claim of ineffective assistance of counsel on direct appeal, “we are limited to the trial court record in our review of the claim[,j and there is usually insufficient evidence within the record to evaluate the claim.”
 
 Aguilar v. State,
 
 847 So.2d 871, 878(¶ 17) (Miss.Ct.App.2002). We find that Ross has
 
 not
 
 presented this Court with any evidence to show that defense counsel’s failure to present such evidence in order to impeach the testimony by Walter prejudiced her defense. In cases “[wjhere the record is insufficient to support a claim of ineffective assistance,” we will deny relief, “preserving the defendant’s right to argue the same issue through a petition for post-conviction re
 
 *61
 
 lief.”
 
 Harris v. State,
 
 979 So.2d 721, 729(¶ 23) (Miss.Ct.App.2008) (citation omitted). Therefore, we dismiss this claim without prejudice.
 

 E. Failure of counsel to request a mental evaluation of Ross.
 

 ¶ 36. Finally, Ross claims that defense counsel should have requested a mental evaluation of Ross to determine if she was sane at the time of the incident. Ross alleges that defense counsel knew that she suffered from a major depressive disorder and had been medically treated for depression. Ross also argues that defense counsel should have sought funds to hire a battered woman’s syndrome expert and that he should have conducted an investigation into Walter’s former marriages to determine whether he had been violent with his previous wives. The Mississippi Supreme Court has noted that: “Asserted error grounded in facts outside the record may not be presented on direct appeal, but is more appropriately presented in a petition for post-conviction relief.”
 
 Brown v. State,
 
 965 So.2d 1023, 1027(¶ 12) (Miss.2007). Again, as there is no evidence in the record to support these assertions by Ross, we find that this issue is not appropriate for direct appeal and dismiss Ross’s claims without prejudice.
 

 V. Whether the circuit court committed reversible error in failing to declare a mistrial sua sponte based upon the State’s remarks during the State’s closing argument.
 

 ¶ 37. Ross claims that the State’s remarks during closing argument were prejudicial and warranted a mistrial. The State said:
 

 It’s a miracle that he’s [Walter] living and she’s not charged with murder. A miracle. What she did to him could have and probably should have killed him. It didn’t, and for that reason, she’s got all that she deserves, and that’s being charged with aggravated assault instead of murder. She’s got more than she deserves in benefitting from him not dying from her act, because that’s what she intended.
 

 Again, defense counsel failed to make any objection to the State’s remarks. “[F]ail-ure to object to an allegedly improper statement made during closing arguments will bar appellate review of the issue unless it constitutes plain error.”
 
 Baskin v. State,
 
 991 So.2d 179, 183(¶ 18) (Miss.Ct.App.2008) (citation omitted). Therefore, Ross is proeedurally barred from raising this issue on appeal. Regardless, this Court gives deference to a trial court’s determination of whether a mistrial is warranted based upon any error in the proceedings that resulted in any “substantial and irreparable prejudice to the defendant’s case.”
 
 Sipp v. State,
 
 936 So.2d 326, 331 (¶ 7) (Miss.2006). Although attorneys are afforded “wide latitude in arguing their cases to the jury[,] ... [they] are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.”
 
 Bailey v. State,
 
 952 So.2d 225, 231(¶ 7) (Miss.Ct.App.2006) (citing
 
 Sheppard v. State, 777
 
 So.2d 659, 661(¶ 17) (Miss.2000)). We review any comments made in opening statements or closing arguments to determine “whether the natural and probable effect of the improper argument [creates] unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.”
 
 Id.
 
 Counsel may not state facts in a closing argument “which are not in evidence, and which the court does not judicially know, in aid of his evidence.”
 
 Id.
 

 ¶ 38. We find no abuse of discretion in the trial judge’s failure to declare a mistrial, sua sponte, based upon the remarks by the State’s counsel. The evidence had al
 
 *62
 
 ready been presented to the jury regarding the seriousness of Walter’s injuries. We find that the State’s comment “was ‘nothing more than a fair comment on the evidence adduced at trial.’”
 
 Branch v. State,
 
 882 So.2d 36, 76 (¶ 131) (Miss.2004) (quoting
 
 Burns v. State,
 
 729 So.2d 203, 228 (¶ 122) (Miss.1998)). Accordingly, we do not find that any statements made by the State’s counsel in the closing arguments unjustly prejudiced Ross in any manner. This assignment of error is without merit.
 

 VI. Whether the cumulative errors in this case denied Ross a right to a fair trial.
 

 ¶ 39. Based upon our review and subsequent findings of the preceding issues, we find that the circuit court did not commit reversible
 
 error,
 
 and this issue is without merit.
 

 ¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. IRVING, J., NOT PARTICIPATING.
 

 [1]
 

 . The gas at the home had been turned off for a couple of months, and heating water on the stove was the only way to get hot water.
 

 [2]
 

 . We are aware of no relation between attorney Lisa Ross and the appellant, Ross. To avoid confusion, any reference to Lisa Ross is as Ross's "appellate counsel."
 

 [3]
 

 . State of Mississippi Judiciary Directory and Court Calendar (2006).
 

 [4]
 

 . Appellate counsel for Ross slated that the additional time was required in order to obtain and review trial transcripts, along with any records from Ross’s previous counsel.
 

 [5]
 

 . Rule 4(g) states that a trial court may extend the time for filing a notice of appeal for "good cause.” M.R.E. 4(g). This extension must not exceed thirty days after the original thirty-day requirement under Rule 4(a). In the instant case, the notice of appeal was not filed until more dian a year after the original thirty-day limit had expired. Rule 4(h) only applies in instances where the party failed to receive notice of the judgment within twenty-one days of its entry. This situation did not occur in the instant case.
 

 [6]
 

 .We note that, in a civil case, this Court has no authority to suspend the rules regarding the timely filing of a notice of appeal. We would, therefore, caution counsel not to file requests for extensions of time, which affect the timeliness of appeals, without determining whether the rules authorize the trial judge to grant those requests.
 

 [7]
 

 . We note that Ross’s request, in the alternative, for this Court to remand for a hearing to determine whether any member of the jury pool had been accused of or were victims of aggravated assault, underscores the fact that usually there is insufficient evidence in the record to evaluate an ineffective assistance of counsel claim on direct appeal.
 

 [8]
 

 . The State argues that the race of the jurors is not reflected in the record and that Ross's claims are merely assertions. However, we find that this information was attached in the record in the form of handwritten notations made on a list of potential jury members. Although it is unclear whose notes those are, they do give the Court adequate information as to the sex and race of all the potential jurors.
 

 [9]
 

 . During jury selection, the State used four peremptory challenges to remove three black females from the venire, along with a white male. The State tendered six black males, one white male, and five white females to the defense, which utilized its challenges to remove three of the black males, and the white male.' The State then challenged another black female, and accepted a white male, a black male, and a white female. The defense used its two remaining peremptory challenges to remove two males, one white and one black. The State used its final challenge to remove a white female.