# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00994-COA

**JUSTIN AGEE A/K/A JUSTIN D. AGEE A/K/A MONKEY**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                                           APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2022 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/21/2023 |
| MOTION FOR REHEARING FILED: | |

## BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.

## GREENLEE, J., FOR THE COURT:

¶1.     Justin Agee was convicted by a Jones County Circuit Court jury of aggravated assault. The circuit court sentenced him to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with three years suspended and seventeen years to serve, followed by three years of post-release supervision (PRS). The circuit court also ordered Agee to pay $427.50 in court costs and $15,000 in restitution. After the denial of his post-trial motion, Agee appealed. Finding no reversible error, we affirm Agee's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.    In 2020, Agee was indicted for the aggravated assault of Seneca Keyes. The record indicates that Agee intended to hire counsel to represent him; however, Agee ultimately informed the circuit court that he did not have the financial means to do so. As a result, the circuit court found that Agee was indigent and appointed an attorney to represent him.

¶3.    At trial, Captain Vince Williams with the Jones County Sheriff's Department testified that on January 12, 2020, he was dispatched to a hospital where Keyes told him that he had been shot by "Monkey," who was later identified as Agee. Keyes stated that Agee accused him of breaking into Latina Barnes' house. Barnes was Agee's girlfriend at the time, and she was also Keyes' cousin. Agee claimed that he had video footage of Keyes breaking into the house and asked Keyes if he wanted to see it. Keyes agreed and got in a vehicle with Agee to go to Barnes' mother's house presumably to view the footage. While en route, Agee pointed a gun at Keyes and said, "Look, I know you burglarized my girlfriend's house . . . and . . . I'm fixing to show you." When they arrived at the house, Barnes was standing in the doorway. As they exited the vehicle, Barnes said to Agee, "Not in front of the children." Then Agee pointed a gun at Keyes and began shooting at him. Keyes was shot in the foot, and a bullet grazed his thigh.

¶4.    After speaking with Keyes at the hospital, Captain Williams spoke with Barnes and then spoke with Agee over the telephone. Approximately two weeks later, Agee turned himself in to law enforcement. Agee waived his rights under *Miranda*[1] and then stated that he did not know anything about the shooting. However, Agee then admitted that he heard

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

gunshots while he was talking to Keyes. Agee explained that "people [shot] out there all the time[, but] it wasn't him [(Agee)]." According to Agee, they were "just talking and smiling."

¶5. Keyes' mother testified that she saw Keyes get in the vehicle with Agee. Then Barnes testified that Keyes and Agee had a verbal altercation when they arrived at her mother's house. Although Barnes went inside the house, she admitted that she heard gunshots moments later. Finally, Keyes identified Agee as the person who shot him.

¶6. After considering the evidence presented at trial, the jury convicted Agee of aggravated assault. On August 24, 2022, the circuit court entered an order sentencing Agee to twenty years in the custody of the MDOC, with three years suspended and seventeen years to serve, followed by three years of PRS. The circuit court also ordered Agee to pay $427.50 in court costs and $15,000 in restitution. The first installment was due within sixty days of his release at a rate of $453.75 per month until paid in full.

¶7. On September 20, 2022, Agee filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. On September 21, 2022, the circuit court denied the motion and appointed the Indigent Appeals Division of the Office of State Public Defender to represent Agee on appeal. On September 27, 2022, Agee filed a notice of appeal.

**DISCUSSION**

¶8. This Court and our supreme court have held that "a motion for a judgment of acquittal notwithstanding the jury's verdict is subject to the same time limit as a motion for a new trial." *Conwill v. State*, 168 So. 3d 1080, 1084 (¶19) (Miss. Ct. App. 2013) (citing *Ross v. State*, 16 So. 3d 47, 52 (¶6) (Miss. Ct. App. 2009)). Under Mississippi Rule of Criminal

3

Procedure 25.1(c), "[a] motion for a new trial shall be made within ten (10) days after entry of judgment (which, for purposes of this Rule, includes both adjudication of guilt and sentence). Upon good cause shown, the court may grant a reasonable extension thereof." Agee's sentencing order was entered on August 24, 2022. So to be timely—and to toll the time limit to appeal—Agee's post-trial motion was due within ten days of that date. *Conwill*, 168 So. 3d at 1084 (¶19). Instead, it was not filed until September 20, 2022. Accordingly, the post-trial motion did not toll the time for filing a notice of appeal, and Agee's notice of appeal—filed on September 27, 2022—was not timely.

¶9. Nevertheless, "this Court . . . has the ability to suspend the requirements of appellate rules in the interest of justice." *Gordon v. State*, 288 So. 3d 381, 388 (¶16) (Miss. Ct. App. 2019) (internal quotation marks omitted); *accord* M.R.A.P. 2(c). "This Court may . . . allow an out-of-time appeal in criminal cases and 'civil' PCR actions." *Gordon*, 288 So. 3d at 388 (¶16). In light of this precedent and the fact that the State does not take issue with the timeliness of Agee's appeal, we will address the assignment of error Agee raises on appeal.

¶10. Agee claims that the circuit court erred by imposing restitution. The terms of a sentence are reviewed for abuse of discretion. *Turner v. State*, 291 So. 3d 376, 384 (¶24) (Miss. Ct. App. 2020). "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Id*. (quoting *Cummings v. State*, 58 So. 3d 715, 719 (¶19) (Miss. Ct. App. 2011)). "Unless the sentence is grossly disproportionate or not within the statutory limits, we will not disturb the sentence on appeal." *Id*.

¶11. Agee argues that the circuit court erred by failing to consider the factors regarding the imposition and amount of restitution set forth in Mississippi Code Annotated section 99-37-3 (Rev. 2020). This section provides, in relevant part:

> (1) When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim . . . .
>
> (2) In determining whether to order restitution which may be complete, partial or nominal, the court shall take into account:
>
> > (a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;
> >
> > (b) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and
> >
> > (c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.

Miss. Code Ann. § 99-37-3(1)-(2). Agee suggests that because the circuit court did not make on-the-record findings of fact as to each of the above factors, the order of restitution should be reversed.

¶12. The State argues that Agee waived this issue by not objecting at the sentencing hearing. The restitution statute states that "[i]f the defendant objects to the imposition, amount or distribution of the restitution, the court shall, at the time of sentencing, allow him to be heard on such issue." Miss. Code Ann. § 99-37-3(3). "But if the defendant fails to object at the time of sentencing, he waives any objection to the imposition, amount, or distribution of restitution." *Sims v. State*, 134 So. 3d 300, 304 (¶9) (Miss. 2014); *see also Lowell v. State*, 229 So. 3d 1054, 1059 (¶16) (Miss. Ct. App. 2017).

5

¶13.    However, Agee argues that he did not waive the issue and cites *Turner* in support of his argument.  In *Turner*, 291 So. 3d at 384 (¶25), "the trial judge stated [at the sentencing hearing] that he was not aware of any [request for] restitution."  "At the close of the [sentencing] hearing, the prosecution requested if they could 'report back' on the issue of restitution, if there was any."  *Id*.  "The trial court granted the prosecution's request."  *Id*.  The trial court subsequently ordered Turner to pay $6,500 in restitution.  *Id*. at 384-85 (¶25).[2]  On appeal, this Court found that "Turner was not afforded an opportunity to object on the day [he] was sentenced because the trial court reserved its ruling on restitution."  *Id*. at 385 (¶27).  "[W]ithout holding another hearing, the trial court issued its order . . . requiring Turner to pay $6,500 in restitution."  *Id*.  We held that "[b]ecause Turner was not afforded an opportunity to object as required by Mississippi law, we find the issue properly preserved on appeal."  *Id*.

¶14.    This case is distinguishable from *Turner*.  Unlike in *Turner*, the prosecution and circuit court were aware of restitution at the time of Agee's sentencing hearing.  The State presented documentation from the Mississippi Attorney General's Office showing that there was a balance of $15,000 owed to the State of Mississippi for Keyes' medical bills.  The only question before the circuit court, which was posed by the court itself, was whether the court had the authority to impose restitution.  After stating that the circuit court would research the issue of restitution, the court asked defense counsel, "[O]n behalf of Mr. Agee, do you wish to offer anything in the sentencing phase?"  The record indicates that there was an off-the-

---

[2] "[A]ny information that may have been given to the trial judge following the hearing was not made part of the record on appeal."  *Id*. at 384 (¶25).

record discussion, and then defense counsel stated, "Your Honor, just that Mr. Agee has never been in trouble before. He does have two children, works. This is his . . . first and only offense." Finally, the circuit court noted that if it had the authority to impose restitution, "then [Agee] will be ordered to make those payments during his period of post-release in monthly installments."

¶15. At no point during the sentencing hearing, despite being given the opportunity to do so, did Agee take issue with the proposed amount of restitution ($15,000), the circuit court's authority to impose restitution, or his ability to pay restitution in monthly installments after his release. Accordingly, the issue of restitution was waived.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**